Gabrielli, J.
The principal issue is whether the rejection of the applications of petitioners, duly licensed medical doctors and osteopathic physicians, for staff membership by respondent Huntington Hospital, a privately funded not-for-profit corporation, is in violation of section 2801-b of the Public Health Law and subject to judicial review. A corollary issue is whether petitioners have standing to maintain this proceeding. Finally, if it be concluded that petitioners are entitled to judicial review and have standing, we are asked to determine whether petitioners are entitled to relief on the merits of their claims.
Petitioner Melvin Fritz, a graduate of Cornell University, was awarded a Doctor of Osteopathy from the Chicago College of Osteopathy following the successful completion of a four-year medical college program. Dr. Fritz maintains his office in Huntington, New York, approximately 10 miles away from the Syosset Hospital, Syosset, New York, where he has been granted staff privileges. It appears that 80% of his patients reside in the area serviced by respondent Huntington Hospital.
Petitioner Ralph Levy received his baccalaureate degree cum laude from Brooklyn College. He completed a four-year medical school course of study at the Des Moines, Iowa College of Osteopathic Medicine graduating with honors. Dr. Levy also maintains his office in Huntington, New York, and is a staff member at both the Syosset Hospital and the more *342 distant Massapequa General Hospital. Some 85% of his patients live in the general community area served by respondent Huntington Hospital.
Each petitioner has passed the New York State Department of Education examinations given to holders of both Medical Doctor (M.D.) and Doctor of Osteopathy (D.O.) degrees and are licensed to practice medicine and surgery in New York State. Petitioners have also completed an accredited internship program in a metropolitan area hospital which included rotational training in surgery, obstetrics, gynecology, internal medicine, pediatrics, neurology, and emergency room service.
After practicing in the community for approximately 12 years, petitioners applied for appointment to respondent’s medical staff. Without otherwise addressing the merits of their applications, respondent notified petitioners that their applications were denied because they had not submitted evidence "of meeting the established criteria of successful completion of American Medical Association approved formal training programs.” Pursuant to the procedures set forth in section 2801-b of the Public Health Law,[1] each petitioner filed an improper *343 practice complaint with the Public Health Council.[2] Following consideration of the complaints and the response submitted by respondent, the council sent the following notice to respondent with respect to each complaint:
"[T]he Council has found cause to credit the complaint. In the Council’s opinion the governing body of the hospital has not acted upon the application with legitimate or acceptable reasons stated related to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant.
"The governing body of the Huntington Hospital is, therefore, directed to make a prompt review of the action involved in withholding staff membership or professional privileges from Doctor Levy [and Doctor Fritz].”
Following remand and review as directed, respondent adhered to its original determination. Again, the Public Health Council expressed its disapproval of respondent’s decision stating that it was "inappropriate [for respondent] to demand an AMA approved internship and/or residency in instances in which Doctors of Osteopathy are applying for hospital privileges”.
The petition alleges that there is no difference between an American Medical Association approved training program and one concluded under the auspices of an accredited osteopathic institution and, thus, the denial of petitioners’ applications was arbitrary and in violation of law. The answering affidavit submitted by respondent, on the other hand, asserts that all 243 physicians including the one Doctor of Osteopathy on the hospital staff completed American Medical Association ap *344 proved programs and that the denial of staff membership to those who have not completed such a program is reasonably related to the hospital’s objective of insuring the highest quality medical care for its patients, and is within its claimed judicially unreviewable discretion.
Concluding that the exclusion of petitioners from staff membership was arbitrary and contrary to the legislative policy expressed in section 2801-b of the Public Health Law, Special Term granted the petition and directed respondents to appoint petitioners to its medical staff. The Appellate Division unanimously reversed, on the law, and dismissed the petition on the ground that respondent’s determination was not a proper subject for judicial interference and that petitioners did not establish that they were entitled to court-ordered staff membership under the doctrine of economic necessity and monoply power.
Prefatorily, it should be noted that the State Department of Education has determined that the osteopathic physicians it licenses are educated, and entitled to be treated, in the same manner as other licensed physicians. As we stated in Matter of New York State Osteopathic Soc. v Allen (26 NY2d 20, 27):
"Osteopathic colleges are required by the Department to provide the same curriculum for their students as is required of approved and accredited medical schools, and it is expressly stipulated that they afford 'medical education which is at least equal, both in substances and in quality, to that provided in non-osteopathic schools recognized by the Board of Regents and the Department of Education.’ Although they also offer their students additional training in osteopathic theory and practice, it was certainly reasonable for the Department to conclude that the educational background of these graduates of recognized osteopathic colleges was sufficient to justify recognition of the M.D. degrees which they subsequently received.”
In support of its decision to deny petitioners staff privileges, respondent argues that since it is a privately funded hospital, it may in its sole discretion exclude any physician and its decision to do so is not subject to judicial review. There can be little doubt that at common law and until the passage of section 2801-b such was the case (Leider v Beth Israel Hosp. Assn., 11 NY2d 205; Van Campen v Olean Gen. Hosp., 210 App Div 204, affd 239 NY 615) except perhaps where economic necessity and monopoly power were demonstrated (see Matter *345 of Salter v New York State Psychological Assn., 14 NY2d 100). However, as we pointed out in Jacobson v New York Racing Assn. (33 NY2d 144, 150), section 2801-b of the Public Health Law effectively limited the Leider rule.
Section 2801-b is, on its face, applicable to a "hospital”, a term of art defined in subdivision 1 of section 2801 of the Public Health Law.[3] Respondent is unquestionably a "hospital” within the meaning of section 2801-b and, therefore, is subject to the requirements and standards therein set forth, irrespective of whether it is a privately funded or public funded institution.
We turn now to the standing issue.
Section 2801-c[4] gives the Supreme Court jurisdiction to enjoin violations or threatened violations of article 28 which, of course, includes the improper practices detailed in subdivision 1 of section 2801-b. Respondent argues, however, that this statute neither authorizes nor confers standing upon an allegedly aggrieved physician to institute a plenary proceeding to compel his appointment to a hospital. Rather, respondent asserts, the statute gives only the Public Health Council or the State Commissioner of Health the power to request the Attorney-General to commence an action in the name of the people to enjoin any improper practices or other violations. With this concept we cannot agree.
We have recently recognized the expanding scope of standing to sue in other contexts (Matter of Dairylea Coop, v Walkley, 38 NY2d 6; Boryszewski v Brydges, 37 NY2d 361; *346 Matter of Douglaston Civic Assn, v Glavin, 36 NY2d 1; Matter of National Organization for Women v State Div. of Human Rights, 34 NY2d 416; Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 NY2d 117) and we are guided here by our statement of principle in Matter of Dairylea (supra, at p 11) that "[o]nly where there is a clear legislative intent negating review * * * or lack of injury in fact * * * will standing be denied”. The first sentence of section 2801-c clearly provides without limitation or qualification, that the Supreme Court has jurisdiction to enjoin violations of the provisions of section 2801-b. While respondent argues that the statute was not intended to confer standing upon petitioners, there is no legal precedent, statute or legislative history to support such a position and, thus, under our holding in Dairylea and other cited cases, that argument must be rejected. No legal impediment exists which would bar petitioners from seeking relief in the courts and, indeed, neither reason nor logic ought prevent them from access thereto for correction of an aggrievement proscribed by law and a violation, or threatened violation, of section 2801-b. Thus, we hold that petitioners have standing to maintain this proceeding.
In so holding we do not mean to imply in any way that Jacobson v New York Racing Assn. (33 NY2d 144, 150, supra) and cited cases are no longer valid. Indeed, subdivision 4 of section 2801-b expressly provides that it "shall not be deemed to impair or affect any other right or remedy”. Rather, we hold only that where the Legislature has enacted a statute which envisages the enforcement of rights thereunder but does not explicitly set forth who shall have standing to maintain enforcement proceedings, that a party suffering injury in fact and arguably falling within the zone of interest to be protected by the statute has standing to sue.
Attention is now directed to the merits.
Section 2801-b makes it an improper practice for the governing body of a hospital to refuse staff privileges if the reasons stated for such refusal are "unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant”; and, most significantly, section 2801-c provides that any finding of the Public Health Council "shall be prima facie evidence of the fact or facts found therein”. Here, the Public Health Council twice stated that it found respondent’s demand that petition *347 ers complete an American Medical Association approved internship program inappropriate. The burden of going forward and rebutting this finding rested on respondent, a burden which it failed to shoulder for respondent neither alleged nor presented any evidence demonstrating that the American Medical Association approved internship programs varied from, much less were better than, the internship programs that petitioners successfully completed. Nor did respondent attempt to establish, other than in a conclusory, self-serving statement, that its practice of requiring American Medical Association approved internships was in any way related to patient care, patient welfare, the objectives of the institution, or the character or competency of the applicants. Indeed, it was affirmatively alleged and posited by petitioners that the internship programs approved by the American Medical Association and the ones in which they trained were the same, and no effort has been made to rebut this strong assertion. We conclude, therefore, that there was prima facie evidence extant in the determination of the Public Health Council.
Under CPLR 103 (subd [c]), the courts are empowered to convert a civil proceeding into one which is proper in form, making whatever order is necessary for its proper prosecution. Section 2801-c of the Public Health Law provides that appropriate remedial relief be sought by means of injunctive action. While the present proceeding has been denominated an article 78 proceeding, it is clear that the petitioners have challenged the failure of respondent hospital to comply with the provisions of article 28 of the Public Health Law and, since the case is properly before this court (CPLR 5602, subd [a], par 2), we convert it to one appropriately seeking injunctive relief (see, e.g., Matter of First Nat. City Bank v City of New York Finance Admin., 36 NY2d 87, 94; Matter of Kovarsky v Housing & Development Admin., of City of N. Y., 31 NY2d 184, 192; Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400, 406; Matter of Phalen v Theatrical Protective Union No. 1, 22 NY2d 34, 41-42, cert den 393 US 1000).
Special Term reached the conclusion that the "determination [of the hospital] excluding the petitioners was arbitrary, capricious, and an abuse of discretion”. Ordinarily, a prima facie unrebutted conclusion made by the Public Health Council might be sufficient to reach such a conclusion as made by Special Term. However, it is preferable and, indeed, a proper *348 procedure for the finality of such a determination to occur only after an appropriate hearing is had before Special Term in which factual findings and conclusions of law may be made. Therefore, we would direct that the action and proceedings be remitted to Special Term for a hearing to determine de novo if there has been an improper practice committed by the hospital in denying staff privileges and membership to these two doctors and whether the reasons for the denial of such privileges "are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant^]” (Public Health Law, § 2801-b, subd 1). In such a hearing at Special Term, the determination of the Public Health Council will be prima facie evidence (§ 2801-c); and the determination and proceedings upon which it was made by the council, would be admissible, if offered, at the hearing at Special Term. Such a procedure would nonetheless be in accord with the confidentiality provisions of subdivision 3 of section 2801-b relating to any other action.
By this determination we do not mean to indicate that hospitals are no longer free to be selective or that they must accept individuals licensed to practice medicine, regardless of competency, character or institutional objectives. However, judicial intervention is warranted where, as here, privileges are denied without proper foundation and without proper reason, and no challenge is made as to the actual medical credentials and capabilities of the applicants, found to be adequate by the Board of Medical Examiners which reviewed their licensing examinations, the State Department of Education which reviewed their academic achievements, and the Commissioner of Education who issued their licenses to practice medicine and surgery.
The availability of health services is a matter of vital public concern and hospitals, which are charged by statute with the obligation of providing high quality, efficient and effective services at a reasonable cost (Public Health Law, § 2800), should direct their best efforts toward ameliorating medical service shortages and increasing the availabilty of physicians, especially to persons in the community in which they serve.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Special Term in accordance with this opinion.
Chief Judge Breitel and Judge Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
*349 Order, reversed, with costs, and matter remitted to Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein.

. Public Health Law (§ 2801-b) provides:
"1. It shall be an improper practice for the governing body of a hospital to refuse to act upon an application for staff membership or professional privileges or to deny or withhold from a physician, podiatrist or dentist staff membership of professional privileges in a hospital, or to exclude or expel a physician, podiatrist or dentist from staff membership in a hospital or curtail, terminate or diminish in any way a physician’s, podiatrist’s or dentist’s professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant.
"2. Any person claiming to be aggrieved by an improper practice as defined in this section may, by himself or his attorney, make, sign and file with the public health council a verified complaint in writing which shall state the name and address of the hospital whose governing body is alleged to have committed the improper practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the council.
"3. After the filing of any such complaint, the public health council shall make a prompt investigation in connection therewith. In concluding such investigation, the public health council is authorized to receive reports from the governing body of the hospital and the complainant, as the case may be, and the furnishing of such information to the public health council, or by the council to the governing body or complainant, shall not subject any person or hospital to any action for damages or other relief. Such information when received by the public health council, or its authorized representative, shall he kept confidential and shall be used solely for the purposes of this section and the improvement of the standards of patient care and patient welfare. The records of such proceedings shall not be admissible as evidence in any other action of any kind in any court or before any other tribunal, board, *343 agency, or person. If the council shall determine after such investigation that cause exists for crediting the allegations of the complaint, the council shall promptly so advise the governing body of the hospital against which the complaint was made, and shall direct that such governing body make a review of the actions of such body in denying or withholding staff membership or professional privileges from the complainant physician, podiatrist or dentist or in excluding or expelling such physician, podiatrist or dentist from staff membership or in curtailing, terminating or in any way diminishing such physician’s, podiatrist’s or dentist’s professional privileges in the hospital.
“4. The provisions of this section shall not be deemed to impair or affect any other right or remedy.”

. The Public Health Council consists of the State Commissioner of Health and 14 other members appointed by the Governor with the advice and consent of the Senate (Public Health Law, § 220). It is generally concerned with the preservation and improvement of public health (Public Health Law, § 225).

. Public Health Law (§ 2801, subd 1) defines a "hospital” as "a facility or institution engaged principally in providing services by or under the supervision of a physician * * * for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition including, but not limited to, a general hospital”.

. Public Health Law (§ 2801-c) provides: "The supreme court may enjoin violations or threatened violations of any provisions of this article; and it may enjoin violations of the regulations of the department adopted thereunder. Upon request of the public health council or the commissioner, the attorney general shall maintain an action in the supreme court in the name of the people of the state to enjoin any such violation. Notwithstanding any limitation of the civil practice law and rules, such court may, on motion and affidavit, and upon proof that such violation is one which reasonably may result in injury to any person, whether or not such person is a party to such action, grant a temporary injunction upon such terms as may be just, pending the determination of the action. No security on the part of the people of this state shall be required. In any action for injunction brought pursuant to this article, any finding of the public health council or the commissioner or hearing officer designated by either shall be prima facie evidence of the fact or facts found therein.” (L 1970, ch 617, § 1.)