OPINION OF THE COURT
Harold R. Soden, J.
Meadow Run Development Corporation (Meadow Run) owns the land of Story Town, a tourist attraction in Warren County, New York, located on the easterly side of Route 9. To expand its parking space in 1978, the corporation made inquiry about the purchase of a parcel located to the south of its present parking lot, both between Route 9 (east) and the northbound lane of the Adirondack Northway, 1-87 (west). In September, 1978, Meadow Run applied pursuant to ECL articles 15 and 24 for permits to expand its parking facilities over the parcel in question (PIQ).
The article 15 application sought a permit to build an earthen causeway across the drainage ditch or brook intersecting the property; the article 24 application sought a permit to fill in a portion of the marshy area of the PIQ for adequate parking.
Both applications were published according to law, and notices were transmitted to all applicable environmental groups and journals.
At that point, counsel apparently informed Meadow Run that the PIQ did not meet with any of the statutory requirements for a "freshwater wetland” (ECL art 24) and that the article 24 application was unnecessary (ECL 24-0703, subd 4).
Accordingly, Meadow Run withdrew its permit application under article 24, continued its article 15 application and asked for a ruling from the department that the PIQ was not, in fact, a freshwater wetland (ECL 24-0703, subd 4). The request was made by letter to the department, dated January 19, 1979.
Subsequent to this letter, the department granted Meadow Run a permit to construct the causeway. But, by letter to Meadow Run’s counsel, dated February 9, 1979, the department determined: "The wetland [PIQ] in question which is located between I 87 and Route 9 west of Story Town is a portion of a wetland larger than 12.4 acres. Consequently, this is a protected wetland and a permit pursuant to Article 24, Title 7, is required for any related activity in the wetland or in the hundred foot buffer strip surrounding the wetland”.
*395 Meadow Run appealed this decision pursuant to title 11 of article 24 of ECL to respondent Freshwater Wetlands Appeals Board (Board). The certified record before the Board is set forth in respondent Board’s submission. Its essential contents consist of:
(1) Letter dated February 9, 1979 from Richard Wild, the Environmental Conservation Regional Permit Administratior, to H. Wayne Judge;
(2) Sketch of Rush Pond wetland;
(3) Letter dated January 19, 1979 from H. Wayne Judge to William Meurman;
(4) Wetland investigation report on Rush Pond wetland prepared by Alan Koechlein, conservation biologist, stationed in Warrensburg, New York, with appendices A, B, C & D;
(5) Appellant Meadow Run’s brief with attached map prepared from aerial photographs by Andrew T. McCormick, a professional land surveyor licensed in the State of New York.
Mr. Koechlein’s investigation report stated in pertinent part:
"The wetland unit located between the two lanes of Interstate 87 is approximately 1.5 to 2 acres. The wetland unit [PIQ] between the Interstate and Route 9 is approximately 6-7 acres. All acreages were estimated using U.S.G.S. IV2 minute quads. Historically, all the wetlands were connected and wetlands were filled by the Interstate and by the parking lot constructed north * * *
"It is my intent to summarize what I consider the more important functional relationships within wetlands and associated water sheds to help answer the primary question. The question is whether Rush Pond and the wetland units along its outlet between Interstate 87 to county Route #9 and/or Glen Lake function together as one wetland.”
A key paragraph of appellant Meadow Run’s brief considered by the Board on the appeal reads as follows: "Perhaps an argument could be made that an independent wetland of less than 12.4 acres, located within 100 foot buffer zone of a jurisdictional wetland should itself be deemed jurisdictional as being part of the larger wetland. However, the commissioner has not sought to advance such argument here nor could he. Although the record itself is devoid of any such information, the closest allegedly jurisdictional wetland to the subject parcel is Rush Pond, which is approximately 585 feet away *396 (see Exhibit A)”. (Exhibit A consists of appellant Meadow Run’s surveyor’s map.)
In the decision, the Board reversed the commissioner and held: "This reversal constitutes an answer in the negative and is a complete defense to the Commissioner’s enforcement of the interim permit requirement under § 24-0703(4).” The commissioner did not apply for a rehearing pursuant to 6 NYCRR 647.17. Meadow Run purchased the PIQ from the Town of Queensbury on April 24, 1979 and proceeded to commence construction of the parking lot.
On or about May 24, 1979, an officer of Meadow Run was served with an order to show cause with a stay provision which provides: "Respondent be and hereby is enjoined, stayed and prohibited from constructing, or in any manner preparing to construct, parking lot, and from conducting any activity set forth in Environmental Conservation Law § 24-0701(2), in or upon, the lands referred to in the above mentioned decision and order of the respondent Freshwater Wetlands Appeals Board * * * and in the 100-foot buffer strip surrounding said wetland”.
The decision and order to which the stay refers did not describe any area of land but merely referred to a "marshy area between Route 9 and Interstate Highway 87”. The decision and order, similarly, did not describe "the 100-foot buffer strip surrounding said wetland”.
Petitioner’s CPLR article 78 petition was heard initially at the June 6, 1979 Saratoga County Special Term in Ballston Spa, New York. The court heard additional oral arguments at an adjourned Special Term in Elizabethtown, New York, on Thursday, June 28, 1979.
Petitioner argues: (1) the initial determination by the commissioner was correct and supported by substantial evidence; (2) the Board should have remanded for further development of the record.
Respondents argue: (1) petitioner commissioner lacks standing to challenge the Board’s administrative determination; (2) respondent Board’s decision had a rational basis and should be affirmed.
 The Commissioner of Environmental Conservation has. standing, and respondents’ motions to dismiss are therefore denied. However, judgment is granted for respondents, and the petition is dismissed.
*397 I STANDING
The pertinent provisions of title 11 of article 24 of ECL read as follows (ECL 24-1103, subd 2 ["Powers”]):
"2. The board may affirm, remand or reverse any order or decision of the commissioner or local government or remand the matter to the commissioner or local government for further proceedings in whole, or with respect to any part thereof, or with respect to any party, provided however that the board shall limit its review to whether the order or decision of the commissioner or local government is:
"a. in conformity with the constitution and the laws of the state and the United States;
"b. within the commissioner’s or local government’s statutory jurisdiction or authority;
"c. made in accordance with procedures required by law or established by appropriate rules or regulations of the commissioner or local government;
"d. supported by substantial evidence on the whole record; or
"e. not arbitrary, capricious or characterized by abuse or discretion or clearly unwarranted exercise of discretion.
"The commissioner or local government shall be bound by the decision of the board except to the extent such decision is reversed or otherwise modified by a court of competent jurisdiction pursuant to this article.”
"Judicial review
"2. Any determination, decision or order of the board pursuant to this title may be judicially reviewed pursuant to article seventy-eight of the civil practice law and rules in the supreme court for the county in which the freshwater wetlands affected are located, within thirty days after the date of the filing of the determination, decision or order of such board with the clerk of the county in which such wetland is located.” (ECL 24-1105, subd 2.)
All parties concede that the above-quoted sections and respondent Board’s regulations (6 NYCRR 647.1-647.23) do not expressly deny standing to the commissioner to commence a CPLR article 78 special proceeding against the Board.
Both respondents argue that the legislative history and intent of title 11 of article 24 of ECL which creates and empowers respondent Board, implicitly deny petitioner’s *398 standing. They assert title ll’s appellate procedure provides any aggrieved property owner with a cheap and simple alternative to a CPLR article 78 review of petitioner’s decisions concerning wetlands. They, in effect, claim that allowing the commissioner standing would give the department an unfair advantage over the individual property owners concerning wetlands determinations.
The Board states: "If the commissioner is allowed to press this proceeding, the board will become merely an advisory committee to the court, rather than an independent administrative body acting as a check upon the actions of commissioner”.
Both respondents claim petitioner lacks the requisite "injury” or "aggrieved status” to have the capacity to sue.
But petitioner argues: "Thus, in the proceeding at bar, since the board is in law as well as in fact a totally independent entity (see Environmental Conservation Law, § 24-1101), and since there is no explicit legislative exclusion of the commissioner from those who may seek judicial review (nor even an intent to exclude them), but, indeed, an implicit conferring upon him of a right to seek judicial review, both reason and authority point to the conclusion that the commissioner has standing to commence this proceeding”.
Petitioner relies upon Matter of Dairylea Co-op. v Walkley (38 NY2d 6) and Matter of Fritz v Huntingdon Hosp. (39 NY2d 339) for the following conclusion: "since there can be no doubt that the commissioner’s 'interest’ herein is within the 'zone of interest’ protected by the Act; and since it is beyond cavil that he will be most sorely 'aggrieved’, 'injured’ and 'harmed’ by the action of the board, this court should hold that he has 'standing’ to commence this proceeding”.
A recent test for "standing” to challenge administrative action is set forth in Dairylea (supra, at pp 9, 11):
"A petitioner need only show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute.”
"Only where there is a clear legislative intent negating review * * * or lack of injury in fact * * * will standing be denied.”
Neither respondent questions that petitioner’s "interest” is arguably within the "zone of interest” protected by the statute *399 (presumably ECL art 24, in toto) and, reiterating, both respondents concede the statute does not expressly deny standing.
It is manifest from the provisions of ECL article 24 that the commissioner and the department which he heads have the primary and over-all responsibility for the preservation and protection of New York’s freshwater wetlands. They are, in effect, "trustees” on behalf of the people of the State. To deny that the commissioner will be injured by a decision of respondent board holding that he has no jurisdiction over a claimed wetland is to claim that no one in the State can be injured by such a decision.
Even adopting respondents’ arguments, this court would be constrained to grant standing (see Police Conference of N. Y. v Municipal Police Training Counsel, 62 AD2d 416, 417) since "wetlands determinations” are matters of general public interest. The Appellate Division, Third Department, has presaged this court’s instant holding: "it might be possible for a public entity to be aggrieved by the action of another governmental body, and thus have standing to voice its complaints before a judicial tribunal” (Matter of Pooler v Public Serv. Comm., 58 AD2d 940).
Finally, in an analgous case, there was no question that the "reviewed” agency or official had "standing” to appeal the "reviewing” board’s or official’s adverse decision in court (see State Div. of Human Rights v Columbia Univ. in City of N. Y., 48 AD2d 1012, revd 39 NY2d 612, cert den 429 US 1096; see, also, Executive Law, § 298).
It is thus not strange that respondents find no persuasive or binding authority supporting their position on standing. Their position is contrary to our governmental separation of power and system of checks and balances (NY Const, art III, § 1; arts IV, VI). Respondents can name no quasi-judicial body in any State or the Federal Government whose decisions are not renewable in some court by any or all parties who previously appeared before such body. If this court upheld respondents’ position, it would allow respondent Board to arrogate to itself the status of a court of last resort.
In sum, the quoted statutory sections and other sections of the ECL which specifically delineate petitioner’s power — including the right to sue (ECL arts 3, 71, 71-2301, 71-2307) together with the precedents cited, indicate petitioner has the "ancillary” or "implied” power to appeal the decision of respondent Board (see Matter of Nicholas v Kahn, 47 NY2d *400 24, 30, 31). Perhaps adoption of a statute similar to section 298 of the Executive Law, which allows direct appeal to the Appellate Division, would better facilitate landowners of this State and the commissioner in obtaining review of respondent Board’s decisions.
II THE MERITS
The Board determined that the commissioner’s decision (that the parcel in question and the main body of the alleged "Rush Pond Wetland” were "merely different parts of a single and ecologically indivisible wetland”) was not supported by substantial evidence. Thus, the following issue is presented: Was the Board’s determination and its decision to reverse the commissioner an appropriate exercise of administrative review?
Preliminarily, it is conceded the parcel in question is less than 12.4 acres in size and has not been declared of "unusual local importance”. (ECL 24-0505.)
Thus, unless the PIQ is "linked into” or "interconnected with” the alleged larger "wetland”, it is not subject to petitioner’s regulatory jurisdiction. Once the commissioner’s decision of "ecological indivisibility” was called into question by appellant Meadow Run before the Board, the burden shifted to petitioner to come forth with substantial evidence to support such theory.
Respondent Board contends this issue is presented pursuant to CPLR 7803 (subd 3) and thus, the "court’s power to alter agency conclusions drawn from the factual record of the case, is narrowly circumscribed”. No party argues that a CPLR 7803 (subd 4) question (substantial evidence) is presented. Therefore, no party claims that this special proceeding should be ordered transferred to the Appellate Division, Third Department, in accordance with CPLR 7804 (subd [g]).
However, assuming this court has the duty to "look to the [commissioner’s] decision and decide whether that decision is supported by substantial evidence” (see Judicial Review of Administrative Action in New York: An Overview and Survey, Gabrielli and Nona, 52 St. John’s L Rev 361, 374), it agrees with respondent that such evidence was not substantial (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176) to support the petitioner’s determination.
The court is aware of the standards for judicial review when *401 a CPLR 7803 (subd 3) question is before the court (see, e.g., Matter of Pell v Board of Educ., 34 NY2d 222, 231; Matter of Stracquadanio v Department of Health of City of N. Y., 285 NY 93; Matter of Barton Trucking Corp. v O’Connell, 7 NY2d 299; Matter of Marsh v Hanley, 50 AD2d 687). There was a rational basis for the Board’s conclusion and decision and the Board’s decision should be reinstated. Since Meadow Run challenged the commissioner’s evidence as being insubstantial with competent evidence, the commissioner was obliged to offer evidence rebutting this claim. The Board’s exercise of discretion was not arbitrary and capricious since the facts in the record were insufficient to support a finding of "ecological indivisibility”.
If the "interlinkage” theory propounded by the commissioner in this case as an exception to his 12.4 acres jurisdictional limit is to be upheld, there must be substantial evidence of such before the commissioner and, if necessary, the Board. It is clear from the statutes quoted that the Board has the express authority to decide whether the evidence presented to it is substantial on the whole record and to reverse a decision of the commissioner.
The petition is therefore dismissed, and the stay order vacated. The decision of respondent Board is reinstated.