48 N.Y.2d 583 (1979)
In the Matter of Cohoes Memorial Hospital, Appellant,
v.
Department of Health of the State of New York et al., Respondents.
Court of Appeals of the State of New York.
Argued October 11, 1979.
Decided November 20, 1979.
Michael M. Emminger for appellant.
Robert Abrams, Attorney-General (George M. Thorpe and Shirley Adelson Siegel of counsel), for the Department of Health and another, respondents.
David W. Morris for Robert C. Yates and another, respondents.
Judges WACHTLER, FUCHSBERG and MEYER concur with Judge JASEN; Judge JONES dissents and votes to reverse in a separate opinion in which Chief Judge COOKE and Judge GABRIELLI concur.
*586 JASEN, J.
The issue presented on this appeal is whether a determination of the Public Health Council pursuant to section 2801-b of the Public Health Law is subject to direct judicial review.
The pertinent facts may be briefly stated. In 1971, Dr. Robert C. Yates and Dr. Edward L. Schwartz were appointed to the active professional staff of Cohoes Memorial Hospital. During the course of their association with the hospital, Dr. *587 Yates became chairman of the executive committee of the medical-dental staff and president of the staff and Dr. Schwartz became chairman of the department of medicine. However, on January 25, 1977, the board of directors of the hospital removed Drs. Yates and Schwartz from their administrative positions and reduced their staff rank from "active" to "courtesy". The hospital gave no reason for its action.
Thereupon, the physicians filed a verified complaint with the Public Health Council alleging that the hospital had reduced their professional privileges in violation of section 2801-b of the Public Health Law. The council promptly investigated the complaint and offered the parties an opportunity to be heard. On April 22, 1977, the Public Health Council found "cause to credit the complaint" of the physicians on the ground that "the hospital acted to curtail or diminish the professional privileges of Doctors Yates and Schwartz without giving reasons related to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the physicians." The council later noted that the diminution of privileges which was found to be improper was the reduction in the physicians' staff rank from "active" to "courtesy". As a result of these findings, the council directed the hospital "to review the action taken in diminishing or curtailing the professional privileges of Doctors Yates and Schwartz" and to undertake that review "in accordance with section 2801-b of the Public Health Law."
In May, 1977, the hospital commenced the instant proceeding pursuant to CPLR article 78, seeking judicial review of the council's decision. Supreme Court dismissed the petition holding that a determination of the Public Health Council is not a final order within the meaning of CPLR 7801. The Appellate Division affirmed, characterizing the council's determination as "a preliminary, nonfinal step to be taken prior to seeking remedial relief by means of an injunctive action." From this order the hospital appeals. There should be an affirmance.
We begin our analysis by noting that at common law a private hospital's actions were immunized from judicial scrutiny inasmuch as physicians served at the pleasure of the hospital. A hospital could terminate a physician's professional privileges for any reason, even an arbitrary one, or for no reason at all. (Leider v Beth Israel Hosp. Assn., 11 N.Y.2d 205, 208-209; Van Campen v Olean Gen. Hosp., 210 App Div 204, 209, affd 239 N.Y. 615; see, generally, Exclusion of or Discrimination *588 Against Physician or Surgeon by Hospital, Ann., 37 ALR3d 645, 659-661.) In 1972, the Legislature tempered the common-law rule by enacting section 2801-b of the Public Health Law which created an appeal mechanism for physicians who claim that they have been discriminated against or unjustly denied professional privileges or staff membership at a hospital. (Guibor v Manhattan Eye, Ear & Throat Hosp., 46 N.Y.2d 736; Fried v Straussman, 41 N.Y.2d 376; Matter of Fritz v Huntington Hosp., 39 N.Y.2d 339.)
The statutory procedure created by the Legislature through which a physician may challenge a termination or diminution of hospital privileges is a two-step process. The first step is a review of the physician's claim by the Public Health Council, an administrative body with professional expertise in the health-care field. It is the duty of the council to undertake a prompt investigation of the action complained of and to allow the parties to the dispute to submit, in a strictly confidential setting, any relevant information in support of their respective positions. Should the council find that there is cause to credit the physician's complaint, its power to grant remedial relief is limited to directing an offending hospital to reconsider its earlier actions. On the other hand, if no improper practice is found, the council simply informs the parties of that fact. In either case, we believe that the Legislature intended the task of the council to be at an end at this point, for it has given the council no further statutory purpose or power.
If the parties, with the assistance of the Public Health Council, are unable to resolve their differences amicably, then, and only then, may the aggrieved physician, if he be so advised, invoke step two of the statutory procedure by commencing an action pursuant to section 2801-c of the Public Health Law to enjoin the hospital from discriminating against or unjustly denying professional privileges or staff membership in violation of section 2801-b of the Public Health Law. (See Guibor v Manhattan Eye, Ear & Throat Hosp., 46 N.Y.2d 736, supra.)
In the injunction action, the court undertakes a de novo review of the issues involved in the dispute. (See Matter of Fritz v Huntington Hosp., 39 N.Y.2d 339, supra.) The court is not bound by the prior determination of the council and is not limited to a consideration of the information previously submitted to that body. While the resulting determination of the council is admissible in the injunction action, it is admissible *589 only to the extent that it serves as prima facie evidence of any fact or facts found therein. (Public Health Law, § 2801-c.)
At the conclusion of the injunction hearing, the court renders a final judgment. Only after the two-step process is complete and the court has ruled in favor of the physician is the physician entitled to any remedial relief. It is at this point that the merits of the physician's claim have been finally determined and, thus, are subject to appellate review.
Petitioner contends, however, that the determination of the Public Health Council ought to be subject to separate judicial review apart from the possibility of review in an injunction action. We cannot agree.
In our view, the Legislature, by enacting section 2801-b of the Public Health Law, intended to provide the physician and the hospital with a professionally competent forum in which to resolve their disputes in an effort to avoid litigation, if possible. It seems obvious that the Public Health Council was never intended to mete out a separate administrative sanction, distinct from the enforcement procedure embodied in section 2801-c. Rather, it functions in an advisory capacity only, using its professional expertise to identify and discourage groundless claims, to mediate and to conciliate disputes between health-care professionals, and to offer the court some aid in resolving such disputes, should the parties fail to come to agreement on their own.[*]
This conclusion is supported by the failure of the Legislature to provide the Public Health Council with any means whatever of enforcing its advisory determinations. Clearly, had the Legislature intended the council's determination to have any punitive effect in and of itself, it could easily have given that body the power to impose a sanction directly upon a hospital or to dismiss the complaint of a physician. The Legislature's failure to do so can only indicate its desire to vest the authority to grant remedial relief in the courts.
We also reject petitioner's contention that the determination of the Public Health Council must be considered final *590 because it is the only administrative agency with jurisdiction over a physician's claim of termination or diminution of hospital privileges. Although it is true that the exhaustion of administrative proceedings normally culminates in a final order, it does not follow that the creation by the Legislature of but a single administrative body with jurisdiction in a given area compels the conclusion that the determination of that agency is a final order within the meaning of CPLR 7801 (subd 1) so as to be reviewable in an article 78 proceeding. This is especially true where the Legislature intended that the agency serve in an advisory capacity only, without power to order any remedial relief. Where, as here, the agency's determination is only a procedural predicate for further judicial proceedings at which the rights of the parties will be ultimately resolved, the administrative ruling is in the truest sense nonfinal for purposes of judicial review.
The dissenters in this court, however, urge that Public Health Council's finding of an "improper practice" stigmatizes the hospital and note that, in a case where the physician fails to bring an injunction action, the hospital is left without any means of challenging an adverse determination of the council. We fail to see how such a situation aggrieves the hospital. There is no social stigma attached to a determination of the Public Health Council. Its deliberations are held in the strictest confidence. Indeed, the record of the proceedings before the council may not be made public and is not even admissible in any subsequent judicial proceeding. (Public Health Law, § 2801-b, subd 3.) Further, the decision of the council is rendered by letter to the governing board of the hospital. Thus, the decision is likely to become public only when and if an aggrieved physician institutes an injunction action.
If the physician does bring such an action, the hospital will be afforded a complete de novo hearing on the physician's claim (Matter of Fritz v Huntington Hosp., 39 N.Y.2d 339, supra), including a full review of the issues which it now urges should be separately reviewed in an article 78 proceeding. If the physician fails to institute an injunctive action, the hospital certainly has no cause to complain, for its termination or diminution of the physician's privileges will remain undisturbed.
The dissent also urges that the council's determination aggrieves the hospital inasmuch as it serves as prima facie evidence, in any subsequent judicial action, of any fact or facts *591 found therein. However, the procedural advantage which attaches to the council's ruling would seem to aggrieve the hospital no more than it aggrieves a physician inasmuch as the determination is accorded such status without regard to whether it is favorable or unfavorable to the physician. In any case, the evidentiary burden upon the hospital is far from overwhelming. The hospital need only show that it had a reason to terminate or diminish the physician's privileges, that the reason related to the legitimate concerns set forth in the Public Health Law, and that it acted in good faith. (Fried v Straussman, 41 N.Y.2d 376, supra.) In view of the minimal showing required to support the hospital's action and noting, as we do, that the statute involved was enacted primarily for the benefit of physicians, we see no need for a separate article 78 review of the council's determination merely because it may be of some procedural value to a physician in a later judicial action.
For all of the above reasons, we hold that a determination of the Public Health Council was not intended by the Legislature to be subject to review pursuant to CPLR article 78. Accordingly, the order of the Appellate Division should be affirmed, with costs.
JONES, J. (dissenting).
I cannot agree with today's holding that the determination by the Public Health Council  that the hospital, in changing the staff ranks of Drs. Yates and Schwartz from "active" to "courtesy", diminished their professional privileges without giving reasons permitted by subdivision 1 of section 2801-b of the Public Health Law  was not a final determination within the meaning of CPLR 7801 (subd 1). I would therefore deny the motion to dismiss and remit the case to Supreme Court for further proceedings on the petition.
The majority's conclusion rests on the premise that the council's determination was, in the words of the Appellate Division whose order is being affirmed, "a preliminary, nonfinal step to be taken prior to [the physicians'] seeking remedial relief by means of an injunction action [pursuant to Public Health Law, § 2801-c]" (64 AD2d 737, 738). That the determination  or, more precisely, the filing of the complaint which activated the process that culminated in the determination  was a prerequisite to an application for injunctive relief in the judicial forum, there is no doubt (Guibor v Manhattan Eye, Ear & Throat Hosp., 56 AD2d 359, affd 46 N.Y.2d 736); it does not follow, however, that that requirement, applicable to the *592 physicians, destroys the finality of the determination, which represented the ultimate disposition made, and which might be made, in the proceeding that had been instituted before the Public Health Council.
When the council, after receiving the complaint filed on behalf of Drs. Yates and Schwartz, had conducted its investigation, concluded that there had been an improper practice committed by Cohoes Memorial Hospital, and so advised the governing body of the hospital, directing that that body review the action taken with respect to the professional privileges of the named physicians, the council had exhausted the authority conferred on it by subdivision 3 of section 2801-b of the Public Health Law and thus had brought to a close the proceeding which had been pending before it. What remained to be done was only action by the hospital  the re-examination of the change of staff rank of the physicians; nothing further was to be or could be done by the council.
The fact that the relief available from and granted by the council did not produce the restoration of former staff status desired by the physicians, perhaps by reason of the failure of the hospital's governing body to comply with the council's directive, as a consequence of which the doctors saw fit to petition Supreme Court for injunctive relief, simply reflects the limited extent of the council's authority and the inadequacy of the proceeding before that body as a means for securing restoration of status. The purpose that the administrative proceeding was to serve  an appraisal of a hospital's claimed improper practice in an informal, confidential setting by a professionally qualified body with the prospect of a direction for re-examination by the hospital itself  was fully accomplished, and the proceeding before the council terminated exactly in one of the ways contemplated by the statute. That further action was necessary to secure a mandate of restoration (if the physicians should be successful in their litigation pursuant to Public Health Law, § 2801-c), and that the authority for such further action is to be found in an adjoining statutory section, does not destroy the discrete and self-contained nature of the administrative proceeding authorized by subdivisions 2 and 3 of section 2801-b of the Public Health Law;[1] nor does it detract from the eligibility of the *593 council's pronouncement and directive as a final determination for judicial review through this article 78 proceeding.
While not necessary to the resolution of the question of the finality of the Public Health Council's determination that the hospital had been guilty of an improper practice, the substantial aggrievement to the hospital in consequence of that determination cannot be overlooked. As a practical matter, the hospital has been publicly held to have been guilty of an improper practice by the citizens body officially charged with authority and responsibility for making such determinations  not an inconsiderable aggrievement in these days of the importance of public relations. Further, in the injunction action that the physicians have instituted in Supreme Court the finding by the council "shall be prima facie evidence of the fact or facts found therein" (Public Health Law, § 2801-c). By its determination which the hospital seeks to challenge in this article 78 proceeding the council has found that an improper practice was committed by the hospital. Although the ultimate issue of improper practice is one of the issues for resolution in the pending injunction action, the finding by the council will be accorded particular weight, and the burden of going forward and rebutting it will rest on the hospital (Matter of Fritz v Huntington Hosp., 39 N.Y.2d 339, 347). The hospital's recourse to the present proceeding is recourse to a vehicle by which, in advance of shouldering that burden, it may have determined its claims that the finding by the council was in excess of authority and was arbitrary and capricious. Those questions  addressed to the council's determination, which assumes a pre-eminent position in the injunction action  will not be the grist of the pending action under section 2801-c. To say that the council's determination is not final for purposes of article 78 review because in the injunction action there will be litigation of the issue of improper practice is to blend together in a single proceeding the two, separate though related proceedings provided by sections 2801-b and 2801-c of the Public Health Law and to ignore the difference in ultimate remedies which the two offer and, *594 equally significant, the consequence in the injunction action of an adjudication in this article 78 proceeding with respect to the validity of the council's finding of improper practice.
Additionally, it may be observed that, because the institution of an injunction action under section 2801-c is an option of the physician, an article 78 proceeding might be said to be the only device available to a hospital by which it may obtain review of a Public Health Council determination and direction issued under subdivisions 2 and 3 of section 2801-b. The cases cited by the Appellate Division are not dispositive of the present appeal and indeed only serve to highlight the distinction between the positions of a complaining physician and a hospital. Each of the authorities cited confirms the availability to a physician who believes he has been the object of an improper practice as defined in subdivision 1 of section 2801-b of the Public Health Law of access to the courts for effective restoration of professional privileges through an action under section 2801-c by which, if he succeeds, he will be able to accomplish a practical nullification of an adverse determination by the Public Health Council in those instances when such a determination had been rendered (Matter of Fritz v Huntington Hosp., 39 N.Y.2d 339, supra; Matter of Moss v Albany Med. Center Hosp., 61 AD2d 545; Yates v Cohoes Mem. Hosp., 64 AD2d 726).[2] None treats the predicament of a hospital against which a council finding of improper practice has been made; under today's decision such a hospital is foreclosed from judicial review of the propriety of such finding. Even if the physician exercises his option to invoke the judicial process, while the hospital will be able to resist the claim of improper practice, it will never be able to eradicate the unfavorable determination of the Public Health Council. Moreover, if the physician does repair to the courts, the hospital will be confronted with the council's determination as prima facie evidence of the facts found therein, bereft of a prior opportunity to challenge such determination and denied *595 the opportunity to defend the injunctive action without an initial handicap.
In the case before us the council's finding of improper practice and its directive for reconsideration by the hospital's governing body has finally terminated the proceeding instituted before it pursuant to section 2801-b of the Public Health Law and review of its determination by a special proceeding under article 78 is now appropriate. The existence of some other remedy to an aggrieved physician, provided by section 2801-c of the statute  which might or might not be resorted to  does not alter this result. I would therefore reverse the order of the Appellate Division dismissing the hospital's article 78 proceeding.
Order affirmed.
NOTES
[*] The procedures set forth in section 2801-b of the Public Health Law are analogous to the conciliation procedures which were at one time required as a prerequisite to an action for divorce, separation or annulment. (See former Domestic Relations Law, art 11-B [repealed L 1973, ch 1034, § 2, eff July 1, 1973].) These conciliation procedures provided an informal forum for the resolution of marital disputes. No remedial relief, however, could result from the conciliation and no appeal was available from any determination of the conciliation commissioner.
[1] That this proceeding is discrete is underscored by the fact that the proceedings authorized by sections 2801-b and 2801-c of the Public Health Law did not come into the statute at the same time. Section 2801-b, providing the procedure for filing a complaint of improper practice before the Public Health Council, was enacted by chapter 284 of the Laws of 1972, whereas the injunctive remedy provided by section 2801-c for violations of any provision of article 28 of the statute had been in existence since adoption of chapter 617 of the Laws of 1970. When the council procedure was enacted in 1972 as section 2801-b, the injunctive remedy section, which had theretofore been numbered 2801-b, was renumbered section 2801-c.
[2] Nothing stated above should be read as suggesting that, insofar as the physician is concerned, a determination by the Public Health Council adverse to him would not likewise be final. The special statutory proceeding before the council would similarly have been concluded.

Additionally, he, too, would be aggrieved thereby and should be afforded an opportunity to challenge such a determination by the council. He should not be required in an injunctive action to shoulder the burden of overcoming the prima facie effect of the council's rejection of that claim without a prior, or indeed any, opportunity for judicial review of its action.