FINGER LAKES HEALTH SYSTEMS AGENCY, Appellant, v ST. JOSEPH'S HOSPITAL et al., Respondents. (Action No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ST. JOSEPH'S HOSPITAL et al., Respondents. (Action No. 2.)

Third Department, July 9, 1981

APPEARANCES OF COUNSEL

*Middleton, Wilson, Boylan & Gianniny (John M. Wilson, II,* of counsel; *Alan S. Lockwood* with him on the brief), for Finger Lakes Health Systems Agency, appellant.

*Robert Abrams, Attorney-General (Alan W. Rubenstein, Jeremiah Jochnowitz* and *Shirley Adelson Siegel* of counsel), for the People of the State of New York, appellant.

*Harris, Beach, Wilcox, Rubin & Levey (William L. Dorr* of counsel), for St. Joseph's Hospital, respondent.

### OPINION OF THE COURT

CASEY, J.

The Finger Lakes Health Systems Agency (FLHSA) was established by the National Health Planning & Resources Development Act of 1974 to oversee and control health care services within its designated area. In 1978 it advised all hospitals in the City of Elmira that it was processing a plan for its area in regard to the regulation of computerized axial tomography scanners and the services provided thereby. These scanners are sophisticated radiological diagnostic machines, called CAT Scanners, and cost in excess of $400,000. FLHSA requested the defen-

dant St. Joseph's Hospital and the Arnot-Ogden Hospital, both located in Elmira and interested in obtaining a CAT Scanner, to withhold their formal applications under article 28 of the Public Health Law for permission to install such machine until FLHSA completed its review of the region's need. However, FLHSA indicated at that time that it would probably recommend only one scanner for the Elmira area. On September 15, 1978, without any attempt to comply with article 28 and before the final decision of FLHSA as to the necessity thereof, St. Joseph's publicly announced that a private professional corporation had requested and received permission to lease space in order to install a scanner in that hospital's Medical Arts Center, a building located approximately 35 feet from the hospital proper, connected thereto by a covered walkway, and then being rented by private physicians as offices. Disregarding the requests of FLHSA to reconsider, St. Joseph's announced construction of a new building structurally tailored to house the scanner and located between the hospital and Medical Arts Center.

On November 21, 1978, Scanner Diagnostic Services, P.C. (SDS), a defendant in both actions, was incorporated by the defendant Calderone for the purpose of providing radiological services to physicians and their patients using the new facility. On November 27, 1978, Standard Scanning Associates, Inc. (SSA), a defendant in Action No. 2 only, entered into an agreement to purchase a scanner with private funds, which SSA then agreed to lease to SDS for five years, and SDS agreed to lease the newly constructed building from St. Joseph's for the same period.

On or about March 13, 1979, FLHSA commenced Action No. 1 against St. Joseph's Hospital, its administrator, the chairman of its board of trustees, and SDS, for a violation of article 28 of the Public Health Law based upon St. Joseph's failure to obtain a certificate of need before constructing the addition to the hospital and, further, for its failure to obtain a review and a favorable recommendation for the installation of a scanner in disregard and circumvention of required legal procedures. This complaint further alleges that SDS is also subject to the provisions of article

28 as a diagnostic or treatment center and is acting in concert with St. Joseph's in disregard of that law. Declaratory and injunctive relief, both temporary and permanent, are demanded.

On or about August 16, 1979, the Attorney-General commenced Action No. 2 on behalf of the People of the State of New York, pursuant to section 2801-c of the Public Health Law, against all the defendants named in Action No. 1 and, additionally, against SSA, to enjoin and restrain the maintenance and operation of the scanner without the approval of the Department of Health.

On or about September 27, 1979, FLHSA moved to conditionally consolidate the two actions and for summary judgment. The defendants in Action No. 1 cross-moved to dismiss that action for lack of FLHSA's standing or capacity to sue, or, in the alternative, for summary judgment.

On or about September 4, 1979, the defendants in Action No. 2 moved for summary judgment dismissing the complaint. The plaintiff, the People of the State, cross-moved for summary judgment.

By order dated July 14, 1980, Special Term granted the motion of FLHSA to consolidate both actions unconditionally.

In regard to Action No. 1, Special Term held that FLHSA lacks the capacity to commence or maintain an action to enforce the provisions of article 28 and dismissed Action No. 1 for that reason. The same order granted the motion for summary judgment of defendants' St. Joseph's Hospital, Sister Martha Gersbach and Daniel J. Donahoe in Action No. 2 on the ground that prior approval of the Commissioner of Health was not required in these circumstances; and it dismissed Action No. 2 against the defendants SDS and Calderone as premature. By separate order dated August 6, 1980, the motion, brought by SSA and its president, Warren Welch, for summary judgment dismissing the complaint was granted by Special Term.

It is apparent that both actions seek the same general relief and contain similar questions of law and fact and were, therefore, properly ordered consolidated uncondition-

ally by Special Term. To grant the relief demanded by FLHSA that consolidation be conditioned on the State's success in Action No. 2 would be an abuse of discretion.

■ We further agree with Special Term's dismissal of Action No. 1 for the lack of standing of FLHSA to maintain it (cf. *Matter of Cohoes Mem. Hosp. v Department of Health of State of N. Y.*, 48 NY2d 583). The function of such a health system is primarily advisory to the Commissioner of Health. Section 2801-c of the Public Health Law expressly empowers the Attorney-General to maintain an action to enjoin a violation of article 28. Neither this statutory authority nor any other affords FLHSA the independent power to enforce violations of the Public Health Law. FLHSA has sustained no injury in fact as the result of the actions undertaken by the defendants, and it has not demonstrated that it arguably falls within the zone of interests protected by the provisions of article 28 (cf. *Matter of Fritz v Huntington Hosp.*, 39 NY2d 339).

■ In regard to Action No. 2, the Attorney-General counters the defendants' claim of undue delay by citing the promptness with which he commenced this action after being requested to do so by the Department of Health. The Attorney-General maintains that such request is a condition precedent to the commencement of such action under the statute (Public Health Law, § 2801-c). However, this statute merely places an affirmative duty on the Attorney-General to commence such action after a request has been made. It should not be interpreted as requiring a request by the Public Health counsel or the commissioner before the Attorney-General can proceed to enjoin article 28 violations. A State has inherent power to sue as *parens patriae* on behalf of its citizens to prevent harm to its sovereign interests, such as the health, comfort and welfare of its people (81A CJS, States, § 297). Section 2801-c should not be read to abridge this inherent authority (cf. *Matter of Hamptons Hosp. & Med. Center v Moore*, 52 NY2d 88, 97). Without any obstacle preventing its institution, almost a full year elapsed from the public announcement by St. Joseph's of its intention to install a scanner and the commencement of the action by the State. During

this lengthy interim, the new building had been completed, the scanner had been installed and the plan had been implemented by all of the defendants in Action No. 2.

■ Without adopting the reasoning of Special Term that prior approval of the Department of Health was not required in order for the defendants to install a scanner in these circumstances and without approving the course of conduct adopted by these defendants, we, nevertheless, are constrained to affirm the grant of summary judgment dismissing Action No. 2 as to all the defendants by Special Term. An action for an injunction is equitable in nature. The probability of hardship to each of the parties from the grant or denial of the application must be weighed in the balance (28 NY Jur Injunctions, § 45, p 362). When this principle is applied here, we have only the possibility of a statutory violation committed by defendants, with no demonstrated public harm or detriment. If the violations in this belatedly instituted action were now found in fact and the injunction granted, it would require the razing or converting of the new building specially constructed to house the scanner; the loss of the investment of considerable private funds in the purchase of the scanner; the cancellation of the contracts and the lease already negotiated; and the deprivation of the patient care already undertaken. An injunction will not issue to prohibit a *fait accompli (Town of Oyster Bay v New York Tel. Co.*, 75 AD2d 598). Clearly and heavily, the balance weighs in favor of the defendants and summary judgment was, therefore, properly granted to them by Special Term.

Although Special Term limited its order dismissing Action No. 2 against the defendants SDS and Calderone to prematurity, the record reveals that the roles of these two defendants are so inextricably intertwined with the acts of the other defendants in Action No. 2 as to be inseparable, and that these two defendants moved for the same summary judgment relief as did the other defendants. Therefore, the grant of summary judgment in this action for equitable reasons should be extended to these two defendants, SDS and Calderone, as well.

As to SSA and its president, Welch, summary judgment

dismissing the complaint as to them was properly granted for the reason that their involvement was limited to purchasing the scanner and leasing it to SDS. As such, they were parties that merely contracted with a diagnostic center and were not subject to article 28 control.

The motions made by defendants in Action No. 1 were properly granted, and the motions made by the defendants in Action No. 2 for summary judgment dismissing the complaint were also properly granted.

The orders should be affirmed, without costs.

KANE, J. (concurring). Although the orders before us should be affirmed, I do not subscribe to the majority's reasoning in Action No. 1 or to its analysis regarding Standard Scanning Associates, Inc. (SSA) in Action No. 2. The record developed in this litigation persuades me that injunctive relief should be denied solely because the scanner became operational before a proper application was made for judicial intervention, a circumstance for which the Health Department is largely responsible.

St. Joseph's press release, dated August 31, 1978, stated that "[a] professional corporation has requested and received authorization * * * to lease rental space in which to house a CT Scanner in the Elmira Medical Arts Center." FLHSA immediately asked it to reconsider its decision and, on October 2, 1978, the Health Department issued an order that St. Joseph's "immediately cease and desist from any and all construction necessary to the installation" of the scanner. Scanner Diagnostic Services, P.C. (SDS) was thereafter formed, in apparent contradiction of the release, and SSA agreed to buy a scanner with delivery scheduled for February 15, 1979. By service of an order to show cause dated February 8, 1979, an action was commenced by Finger Lakes Health Systems Agency (FLHSA) against St. Joseph's, its administrator and chairman, the Department of Health, and the Attorney-General. On February 28, 1979 a notice was issued by the Health Department that it would conduct an investigatory hearing on March 20, 1979 to determine whether St. Joseph's was in violation of article 28 of the Public Health Law. While the complaint

in that action was not made a part of the record, the answer of the Attorney-General and the Health Department, dated March 2, 1979, objected in point of law that no request had been made of the former to maintain an action against St. Joseph's and, in light of the pending hearing, that there had been no final administrative determination by the latter upon which FLHSA could force the Commissioner of Health to perform some duty. On March 14, 1979, Special Term made an order dismissing this action on the ground it was premature as to the Attorney-General and the Health Department, and because jurisdiction had not been obtained over the remaining defendants. It does not appear that any appeal was taken from this order. Meanwhile, a lease was executed between SDS and St. Joseph's on March 2, 1979. Action No. 1 was thereafter commenced by FLHSA. It obtained an order to show cause dated March 13, 1979 bringing on an application for a preliminary injunction, but Special Term's decision denying relief indicates that the scanner was in operation before the motion was heard. The Health Department conducted its hearings on March 20, 1979 and April 27, 1979. A representative of the Health Department, in a letter dated August 8, 1979, requested the Attorney-General to commence what later became Action No. 2. Lastly, on August 24, 1979, the hearing officer issued his report concluding that he was unable to determine whether St. Joseph's was offering the services of a scanner.

The foregoing sequence of events readily demonstrates that St. Joseph's proceeded openly with its arrangements to acquire a scanner even after the Health Department was sufficiently aware of and concerned about those plans to issue an order of cessation. Over four months later, when finally prodded into some further efforts to arrest the project by FLHSA's first lawsuit, the Health Department scheduled a hearing into the circumstances of the matter, but strenuously resisted being compelled to take legal action against St. Joseph's. Thereafter, following the denial of FLHSA's application for a preliminary injunction in Action No. 1, the Health Department requested the Attorney-General to bring suit to enjoin St. Joseph's operation of a scanner. Interestingly, this apparent reversal of position

occurred before the hearing officer issued his report on the investigation.

As a not-for-profit corporation, FLHSA plainly has legal capacity to sue and be sued (Not-For-Profit Corporation Law, § 202, subd [a], par [2]). The chief purpose of such an agency is to make recommendations on applications to construct hospitals in an effort to control spiralling medical costs (see US Code, tit 42, § 300*l et seq.;* Public Health Law, § 2802, subds 1, 2). Construction is defined to include substantial improvement or modification of a hospital, including its equipment (Public Health Law, § 2801, subd 5), and the Commissioner of Health may not take action contrary to the advice of a health systems agency on such applications without giving it an opportunity to request a public hearing (Public Health Law, § 2802, subd 5). Although its functions are largely advisory in nature, I fail to understand how an agency intimately concerned with hospital planning and cost containment can be denied standing to litigate whether the activities of St. Joseph's in procuring scanner services required prior approval. Of course it might conceivably be found, on the merits, that those endeavors lie outside the scope of article 28 of the Public Health Law, but if an individual physician has standing to seek relief in the courts from a threatened violation of that article *(Matter of Fritz v Huntington Hosp.,* 39 NY2d 339, 346), it would be illogical to deny judicial access to FLHSA on a matter which touches on its very reason for existence. The denial of standing would obviously injure its ability to completely discharge its proper responsibilities. It would be academic, however, to pass on FLHSA's alternate request for a declaration of rights in Action No. 1 since it is apparent that effective relief could no longer be granted even if the article was violated.

In Action No. 2, summary judgment should be granted to SSA and its president simply because it would be inequitable to direct the removal of its scanner at this late date. The majority views SSA as the mere owner of a piece of machinery not subject to article 28 control. However, the pleadings herein reveal far more than the casual lease of a scanner from an independent supplier. The re-

lationships between St. Joseph's, SDS and SSA point to a studied attempt to evade the application and approval process. Whether that objective was accomplished in a legally acceptable manner is immaterial now, but the issue may recur in the future and this court should not prematurely give its indorsement to this practice.

MAHONEY, P. J., SWEENEY and WEISS, JJ., concur with CASEY, J.; KANE, J., concurs in a separate opinion.

Orders affirmed, without costs.