Chief Judge Fulo.
A number of New York physicians, who had originally received their medical education in osteopathic colleges, were subsequently awarded M.D. degrees by an institution in California. The State Department of Education has issued to these doctors licenses to practice medicine and surgery bearing the inscription “ D.O., M.D. ”, and the sole question presented on this appeal is whether the Department exceeded its authority when it placed such an inscription on their licenses.
Each of the physicians whose license inscription is challenged herein is a graduate of an approved osteopathic college—where he received the degree of Doctor of Osteopathy (D.O.)—and is fully licensed to practice medicine and surgery both in this State and California. In 1961, following a decade of growing mutual respect between the two branches of medical science, *24 the California Osteopathic Association and that State’s Medical Association entered into an agreement to eliminate osteopathy as a separate field of medicine and to accept all osteopaths as fully qualified medical doctors.[1] In accordance with this agreement, legislation was enacted the following year which permitted the California College of Medicine (CCM), formerly an osteopathic college, to “ issue an M.D. degree to all D.O. physicians and surgeons licensed to practice as such by the State of California ”. Approximately 50 New York physicians, qualified under this provision, exchanged their previous degrees of Doctors of Osteopathy for new diplomas awarding each the degree of Doctor of Medicine. They then submitted their new degrees to the State Education Department, with the request that the M.D. degree be inscribed on their licenses. Although required by statute to inscribe the initials “ D.O.” on the licenses of all graduates of osteopathic colleges,[2] the Department complied with this request to the extent of issuing new licenses containing the legend, “ D.O., M.D.”
Some two and a half years after the first of these license inscriptions had been awarded, the petitioner, a membership corporation organized to promote and protect the practice of osteopathic medicine, demanded that the Department rescind the licenses and remove the “M.D.” inscriptions. When that demand was refused, it commenced the present article 78 proceeding seeking to compel compliance with its demand. Although none of the recipients of the challenged licenses were named as parties to the proceeding, 11 of them have appeared as interveners. A stipulation of facts was prepared and, based *25 upon it, the court at Special Term sustained the petition. The Appellate Division, Justice Herlihy dissenting, affirmed that determination, and the respondents and intervenors have appealed, as of right, to this court.
In addition to attacking the determinations below on the merits, the appellants also raise several procedural points which, if valid, would justify a reversal. Although there is much to be said for some of those objections, we pass over them and turn immediately to a consideration of the merits.
In so doing, it is important to emphasize at the outset that we are concerned only with the inscriptions on the intervenors ’ licenses, for it is acknowledged that each of the intervenors is fully qualified, in every respect, to practice medicine and surgery and there is nothing to prevent any of them from displaying and using the diploma he has received from COM in any manner he sees fit. In other words, regardless of the outcome of this case, the intervenors would be entitled both to represent themselves as medical doctors and to function as such, and, as we have already indicated, we are called upon merely to decide whether the Department of Education has the power to accord official recognition to that M.D. degree by inscribing it on their licenses.
The petitioner relies on two provisions of the Education Law which, it claims, preclude the Department from inscribing an “ unearned” degree on the intervenors’ licenses—namely, section 6509, which recites that the Department shall issue a “ license to practice according to the qualifications of the applicant ’ ’[3] and section 6512 (subd. 3, supra, p. 24, n. 2), which provides that licenses issued to graduates of osteopathic colleges must bear the inscription “ D.O.” Taken together, the *26 petitioner maintains, these sections require that a license accurately reflect the licensee’s educational background and that it may contain only the “ D.O.” inscription when issued to the graduate of an osteopathic school.
A careful reading of the first of the statutory provisions cited by the petitioner, section 6509, reveals that it has no bearing on the question before us. When that section was enacted, prior to 1961, the Board of Medical Examiners tested applicants for three different types of “license to practice” — the license to practice medicine and surgery, the license to practice osteopathy and the license to practice physiotherapy. Although the separate license to practice osteopathy is no longer issued, the other two still are (Education Law, § 6506), and this is all that is meant by the statute’s declaration that the Department shall issue a ‘ ‘ license to practice in accordance with the qualifications of the applicant.” In fact, although section 6509 does require that the license recite that the applicant has given 1 ‘ satisfactory evidence ’ ’ of his educational qualifications, it nowhere indicates that those qualifications must actually be set forth on the face of the license. To be sure, the Education Department has made it a custom to insert the initials “ M.D.” on the licenses of those applicants who have presented it with such a diploma but this custom exists wholly apart from any requirement of the statute.
In any event, the real question posed is not whether the Education Law requires that a license reflect the degree received by the licensee but, rather, whether the M.D. degree awarded these interveners may be given such recognition. The only specific requirement of the statute in this regard is that licenses issued to persons trained in osteopathic medicine must bear the notation “ D.O.,” a requirement which in this case was clearly met. In the absence of an express statutory prohibition, there would seem to be nothing wrong with granting an additional ‘1 M.D. ’ ’ inscription to holders of that degree.
The courts below were of the opinion that the “ D.O., M.D.” inscription would have a misleading effect since it implies more complete medical training than these recipients had in fact received. However, the Education Department, which has considerable expertise in these matters, was of a different opinion *27 and, in light of the stipulated facts, we may not conclude that its determination was arbitrary or unreasonable. Osteopathic colleges are required by the Department to provide the same curriculum for their students as is required of approved and accredited medical schools, and it is expressly stipulated that they afford ‘ ‘ medical education which is at least equal, both in substances and in quality, to that provided in non-osteopathic schools recognized by the Board of Begents and the Department of Education.” Although they also offer their students additional training in osteopathic theory and practice, it was certainly reasonable for the Department to conclude that the educational background of these graduates of recognized osteopathic colleges was sufficient to justify recognition of the M.D. degrees which they subsequently received.
Matter of Kurk v. Medical Soc. of Queens County (18 N Y 2d 928, affg. 24 A D 2d 897), relied upon by the petitioner, is not to the contrary. Although we there held that a private medical group was free to distinguish, if it so desired, between holders of M.D. degrees who attended medical school and those originally trained as osteopaths, this hardly means that the Education Department lacks the power to take a different view and accord recognition to both. The only distinction which the law requires is that the licenses of graduates of osteopathic colleges bear the inscription D.O., and this requirement, as noted, was fully met in this case.
Indeed, although we do not question the petitioner’s claim that it is acting in what it considers to be the best interests of the osteopathic profession, the entire thrust of its argument appears to be that persons trained in osteopathic institutions are somehow less qualified as physicians than those trained in medical schools. This position is not only contrary to the stipulated facts but goes against the express legislative policy of this State, which is to recognize such persons as fully competent, in every respect, to practice medicine and surgery. The Department, by recognizing that an osteopathic college affords its students all of the prerequisites for an M.D. degree, has acted in full accord with this policy and its action was neither in excess of its powers nor arbitrary.
*28 The order appealed from should he reversed, with costs in all courts, and the petition dismissed.
Judges Burke, Scileppi, Bergan, Breitel and Jasen concur; Judge Gibson taking no part.
Order reversed, with costs in all courts, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. In that same year, New York, which was already giving the same examinations to osteopaths as it was to medical doctors, eliminated its separate license to practice osteopathy and provided that, henceforth, persons trained in osteopathic schools could be accorded the same license to practice medicine and surgery which medical doctors receive (Education Law, § 6506, subd. 6; § 6512, subd. 3, as amd.; L. 1961, eh. 685).

. Subdivision 3 of section 6512 of the Education Law, in relevant part, reads as follows:
“ Graduates of colleges of osteopathy registered by the New York state education department who pass the medical licensing examination of the state of New York shall be issued a license to practice medicine and surgery. A license so issued shall contain thereon, following the name of the licensee, the letters D.O.” (Emphasis supplied.)

. Section 6509 (erroneously numbered “6059” in its latest amendment [L. 1960, ch. 117]), insofar as pertinent, recites:
“ On receiving from the board [of medical examiners] an official report that an applicant has successfully passed the examinations and is recommended for license, the department shall issue to him a license to practice according to the qualifications of the applicant. Every license shall be issued by the department and shall state that the licensee has given satisfactory evidence of fitness as to age, character, preliminary and medical education and all other matters required by law, and that after full examination he has been found properly qualified to practice.”