In the Matter of FRANK LOBACZ, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, Respondent.

Third Department, October 17, 1991

APPEARANCES OF COUNSEL

*Wood & Scher (Anthony Z. Scher* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Barbara K. Hathaway* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

Petitioner attended Philadelphia College of Osteopathic Medicine and received the academic degree of Doctor of Osteopathy (hereinafter D.O.) in 1973. Thereafter, petitioner performed three years of approved postgraduate training in New York hospitals and, having passed the licensing examination, was licensed by the State to practice as a physician in 1974.[1] After petitioner began private practice, he experienced difficulty in obtaining both patients and staff privileges at local hospitals because of unfamiliarity of both medical professionals and patients with the training, education and skills of a practicing physician with a D.O. degree. As a result of this perceived bias, petitioner decided to study to obtain a Doctor of Medicine (hereinafter M.D.) degree. Petitioner chose to matriculate at Ross University in Dominica, a foreign unaccredited medical school. Petitioner never attended classes at Ross University but completed one year of clinical clerkships in New York hospitals. In 1982 he passed the graduating examination given to Ross University medical students and received an M.D. degree from Ross University.

Based upon the Ross University degree, petitioner, in a letter dated July 19, 1984, sought approval from the Division of Professional Licensing Services to use the title M.D. in connection with his medical practice. As this letter revealed, petitioner was already using the title M.D. In a letter dated August 9, 1984, the Director of the Division of Professional Licensing Services advised petitioner that because he was licensed as a D.O., he could not use the title M.D. in connection with his practice. The Director further advised petitioner that his subsequent acquisition of an M.D. degree from a foreign, unaccredited school did not automatically authorize him to use that degree in his practice, and that he must complete three years of postgraduate training. Petitioner was also informed that the credentials he presented in his correspondence would not be accepted in lieu of the postgraduate training required after he graduated from Ross University. Petitioner was warned that his use of the term M.D. on his

---

1. We note here that, to qualify for a physician's license, an applicant is required by statute to achieve, *inter alia,* the degree of Doctor of Medicine *or* Doctor of Osteopathy *(see,* Education Law § 6524 [2]), either of which, upon proper licensing, entitles the applicant to practice medicine as a physician.

letterhead was unauthorized and could lead to disciplinary action.

In June 1989 charges were instituted against petitioner. It was alleged that he was practicing the profession fraudulently in violation of Education Law § 6509 (2) in that, from August 1984 to June 1989, petitioner, "a Doctor of Osteopathy, knowingly and intentionally persisted in the unauthorized use of the title 'M.D.' in his practice as a licensed physician * * * notwithstanding notice by the State Education Department in or about August, 1984 that his use of the term 'M.D.' was unauthorized".[2] A hearing was held wherein petitioner claimed that he was only telling the truth when he used the M.D. title in connection with his practice because he did earn such a degree from Ross University. The Hearing Committee, however, concluded that it could not make a recommendation because it did not "feel competent" to reach a determination "on an issue that appears to be of legal origin". The Commissioner of Health rejected the Hearing Committee's finding that it was not competent to rule, found that petitioner was not entitled to use the term M.D. and held that he was, therefore, practicing fraudulently. Accordingly, the Commissioner of Health recommended that petitioner's license be suspended for two years and that the execution of the suspension be stayed. The Regents Review Committee determined that it was not fraudulent for petitioner to use the M.D. degree he earned and recommended that the charges be dropped. The Board of Regents found petitioner guilty of fraudulent practice in using the title M.D. in connection with his practice of medicine and suspended his license for two years, but stayed execution of that sentence. Upon implementation of this decision by respondent, petitioner commenced this proceeding.

The determination should be annulled as lacking substantial evidence in the record to support it *(see, Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931). The determination that petitioner fraudulently practiced medicine requires a finding, by a preponderance of the evidence *(see,* Education Law § 6510 [3] [c]), that petitioner intentionally misrepresented a material fact in so practicing *(see, Matter of Tompkins v Board of Regents,* 299 NY 469, 476). There is nothing in the record to contradict petitioner's position that

2. Petitioner was served with other charges, but they were dismissed and will not be addressed herein.

he did not misrepresent any fact because he does indeed have an M.D. degree. Respondent takes the position that because the Department of Education is statutorily empowered to review qualifications in connection with *licensing* requirements *(see,* Education Law § 6507), it possesses concomitant power to require its authorization in the use of medical diplomas received by its licensees, specifically, the use of M.D. by a D.O. physician with an M.D. degree. The Court of Appeals, however, in a case involving the Department of Education's power to alter licenses, stated, in dictum, that licensed D.O. physicians with M.D. degrees are "entitled both to represent themselves as medical doctors and to function as such" *(Matter of New York State Osteopathic Socy. v Allen,* 26 NY2d 20, 25). The court further implied that, regardless of the designation on their licenses, a physician may display and use his diplomas "in any manner he sees fit" *(supra,* at 25). In our view, respondent's "approval" of petitioner's use of his M.D. diploma was not statutorily required. Accordingly, absent proof, lacking in this record, that petitioner's use thereof misrepresented some material fact in his practice of medicine, the determination cannot stand.

CASEY, YESAWICH, JR., and MERCURE, JJ., concur.

Adjudged that the determination is annulled, with costs, and petition granted.