[632 NYS2d 276]

In the Matter of RICHARD GOLD, Petitioner, v MARK CHASSIN, as Commissioner of the New York State Department of Health, Respondent.

Third Department, October 12, 1995

APPEARANCES OF COUNSEL

*Nathan L. Dembin & Associates, P. C.,* New York City *(Nathan L. Dembin* and *Jeffrey Berkowitz* of counsel), for petitioner.

*Dennis C. Vacco, Attorney-General,* New York City *(Barbara K. Hathaway* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH JR., J.

After a lengthy hearing, a Hearing Committee of the State Board for Professional Medical Conduct found that petitioner, a licensed psychiatrist, had made sexual advances toward, or engaged in sexual relationships with, five of his former patients. Having sustained six of the seven specifications of professional misconduct with which petitioner had been charged, the Hearing Committee voted to revoke his medical license. Upon review, the Hearing Committee's determination, with minor modifications, was upheld by the Administrative Review Board for Professional Misconduct, prompting petitioner to commence this proceeding to annul that determination, enforcement of which has been stayed pending this proceeding.

Petitioner argues that because the length of time between the incidents complained of by four of the patients (patients B, C, D, and E) and the bringing of charges with respect thereto —between 15 and 25 years in each case, the bulk of which resulted from the patients' delay in registering their complaints—substantially limited his ability to defend against those charges, they should be dismissed. Although petitioner recognizes that no Statute of Limitations governs the institution of disciplinary proceedings and that, to prevail on the basis of delay, he must demonstrate actual prejudice *(see, Matter of Moss v Chassin,* 209 AD2d 889, *lv denied* 85 NY2d 805; *Matter of Rojas v Sobol,* 167 AD2d 707, 708, *lv denied* 77 NY2d 806), he maintains that he has suffered such prejudice in that his defense was severely hampered by the loss of his office records for the time periods in question, the death, in the intervening years, of possible witnesses and the inevitable blurring and fading of memories. Respondent counters that the critical events—the alleged sexual encounters between petitioner and his patients—are not likely to have been memorialized in any records or observed by anyone, and that where, as here, the charges relate to what would have been clandes-

tine, one-on-one encounters, the charged party is not materially prejudiced by the unavailability of witnesses or documents, or dimmed memories.

█ It is, however, precisely because such activities are invariably pursued covertly, that it is critical that the party charged be afforded every reasonable opportunity to demonstrate his or her innocence, whether by means of exculpatory circumstantial evidence or by impeaching the accusers' credibility. Given that the participants' conflicting testimony is likely to be the only direct proof of what actually transpired between them, collateral evidence takes on added importance; the potential impact of that evidence must therefore be carefully assessed before it can be held that no prejudice has resulted from its loss. Application of these principles leads us to conclude that respondent's determination should be modified.

Patient C, who was allegedly treated by petitioner in 1973 or 1974, complained of an incident during a treatment session in which she claims petitioner turned the lights down, sat next to her and made romantic advances, causing her to leave the office, never to return. Because of the time, place, nature and brief duration of this occurrence, which is akin to those complained of in *Matter of Rojas v Sobol (supra),* there is little, if anything, that office appointment records could add to petitioner's defense of this charge *(see, supra,* at 708). Nor has petitioner identified any other document or testimony that, had it been available, might have cast doubt upon patient C's account of the incident. Not insignificantly, a friend of patient C, to whom patient C had recounted what had occurred within weeks after it allegedly took place, testified and confirmed patient C's account. While patient C's treatment records might have contradicted her recital of the problems for which she sought treatment, the absence of these records cannot, in this context, be said to have deprived petitioner of due process.

Patients B, D, and E each claim to have engaged in ongoing sexual relationships with petitioner, participating in multiple sexual encounters in his office, allegedly between the appointments of other patients, at lunch time or on days when petitioner's secretary did not work. These events purportedly took place in 1968 or 1969 (patient B), 1973 (patient E) and 1977 to 1979 (patient D). Neither patient B, who claims to have had sex on every visit to petitioner's office, nor patient E, who estimated that she had intercourse with petitioner 20

times, remembers ever seeing any secretary or receptionist; patient D claims that a secretary was present when petitioner first began treating her, but that she no longer saw the secretary once the sexual relationship commenced. Petitioner's office records, if they indicated that one or more of these patients dealt with the secretary or regularly had appointments at times when the secretary was present, as petitioner contends, undoubtedly would have cast doubt on the veracity of their representations.

Petitioner was, however, able to adequately defend against the charges leveled by patient D. He cross-examined her at length about her repeated hospitalizations, her use and abuse of medications and the matters that caused her to seek psychiatric care. Petitioner was also able to put some of her medical records—including contemporaneous evaluations by other mental health professionals—into evidence to illustrate the types of difficulties she had at the time he was treating her. These records also formed the basis for an expert opinion with respect to the possibility that patient D was fantasizing about the events at issue. Petitioner's defense to this aspect of the case against him was also augmented by his cross-examination of a social worker to whom patient D had revealed their sexual activity, and by his attempt to impeach patient D's credibility through the use of prior inconsistent statements. After reviewing the record as a whole, we are unable to say that the lack of appointment logs and medical records had a material impact on petitioner's ability to defend against the charges involving patient D.

With respect to patients B and E, however, the unavailability of petitioner's records detailing their particular psychological impairments, which might have included a propensity to fantasize or fabricate, was more profound for there are no other records petitioner could use to demonstrate these failings. As for these patients, the unavailability of petitioner's appointment logs and treatment records, taken together, undeniably had a palpable effect on his ability to defend against the charges, which arose from events that occurred more than 20 years earlier. Additionally, patient E testified that her family physician had questioned her regarding petitioner, and indicated that he had heard "stories" about petitioner's misconduct. Petitioner was unable to refute this damaging hearsay evidence, because the physician in question—who, peti-

tioner avers, never ceased referring patients to him—has since died. Accordingly, in our view, petitioner has demonstrated sufficient prejudice to warrant dismissal of the charges involving patients B and E.

▪ The remainder of petitioner's arguments are unpersuasive. The jury verdict rendered in patient A's civil damage suit against petitioner, commenced in 1981, does not, as petitioner contends, bar the Office of Professional Medical Conduct (hereinafter OPMC) from relitigating the same factual issues in a disciplinary context, for OPMC was neither a party to that litigation, nor could it be said to have been in privity with patient A at the time of her lawsuit such that it should be bound by the outcome thereof (see, Green v Santa Fe Indus., 70 NY2d 244, 253-254). And, annulment is not warranted because of OPMC's failure to turn over patient A's original complaint, as required by the holding in Matter of McBarnette v Sobol (83 NY2d 333), until near the end of the hearing, after patient A had finished testifying. Similar arguments have heretofore been considered by this Court and rejected (see, Matter of Murray v Chassin, 213 AD2d 858, 859; cf., Matter of Finelli v Chassin, 206 AD2d 717, 718).

Nor was it improper to grant OPMC's motion to amend the charges in the midst of the hearing, for petitioner was cognizant of patient E's allegations, and of the fact that OPMC was seeking to discover patient E's identity for the purpose of investigating her claims as early as April 1992, when he moved to quash a subpoena OPMC had served on the American Psychiatric Association. Having contributed to the delay in bringing these additional charges, and having been fully aware of the underlying factual allegations for over a year, petitioner's claim that he was surprised or substantially prejudiced by the late amendment lacks conviction (see, Matter of Major v Board of Regents of Univ. of State of N. Y., 160 AD2d 1041, 1043, lv denied 76 NY2d 705).

▪ Of the remainder of petitioner's arguments, the only one that merits comment is his assertion that his cross-examination of several of the witnesses was improperly curtailed. Where, as here, a party is charged with one-on-one misconduct occurring many years ago for which there is no significant corroboration, and resolution of the charges hinges entirely on the credibility of the participants, elementary fairness dictates that the charged party be afforded great latitude in question-

ing his or her accusers.* Even with this admonition in mind, a review of the record reveals that petitioner was not denied a fair hearing with respect to the charges involving patients A, C, and D, for he was permitted to explore, insofar as could reasonably be considered relevant, matters bearing on the credibility of the witnesses against him, as well as the possibility that patients C and D had been influenced by media coverage of patient A's civil trial, or were disposed to misrepresent the events underlying their complaints about petitioner's conduct.

■ Lastly, inasmuch as the Hearing Committee explicitly noted that it had evaluated the charges relating to each of the patients separately, deciding each case "on its individual merits"—despite having found certain similarities in the complainants' accounts—and the record amply supports its findings of guilt with respect to the charges involving patients A, C, and D, those charges must be sustained. Because the penalty was invoked on the basis of all of the findings, however, we must remit for redetermination of an appropriate penalty, without consideration of the charges that have been dismissed.

MERCURE, J. P., CREW III, PETERS and SPAIN, JJ., concur.

Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of charges with respect to patients B and E; petition granted to that extent, said charges are dismissed, the penalty is annulled, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.

---

* For this reason, petitioner's contention that he was improperly prevented from cross-examining two women to whom patients B and E allegedly disclosed his misconduct—whose accounts were introduced in affidavit form, as mandated by the Administrative Law Judge—may have merit. In light of our ruling that the charges involving these patients must be dismissed on other grounds, however, we need not, and do not, evaluate the impact of this curtailment.