Robert DeMICHELE, Plaintiff–Appellant,

v.

GREENBURGH CENTRAL SCHOOL DISTRICT NO. 7, and Arnold B. Green, individually, Defendants–Appellees.

Docket No. 98–7081

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1998.

Decided Feb. 17, 1999.

Craig T. Dickinson, Lovett & Gould, White Plains, New York, for Plaintiff–Appellant.

Vincent P. D'Andrea, D'Andrea & Goldstein, Scarsdale, New York, James P. Drohan, Donoghue, Thomas, Auslander & Drohan, Scarsdale, New York, for Defendants–Appellees.

Jay Worona, General Counsel, New York State School Boards Association, Inc., Albany, New York, for Amicus Curiae New York State School Boards Association, Inc.

Before: OAKES, WALKER, Circuit Judges, and KAPLAN, District Judge.[*]

JOHN M. WALKER, JR, Circuit Judge:

Plaintiff appeals from an order of the United States District Court for the Southern District of New York (Charles L. Brieant, *District Judge*) granting defendants' motion for summary judgment and dismissing plaintiff's claims under 42 U.S.C. § 1983. In his complaint, plaintiff alleges that (1) defendants violated his right to due process, secured by the Fourteenth Amendment, when he was subjected to a disciplinary hearing and subsequently terminated from his position as a tenured physical education teacher for acts that occurred approximately twenty-four years earlier, and (2) he was deprived of a liberty interest when defendant Arnold Green, the prosecutor at the disciplinary hearing, disclosed the disciplinary decision to the media. We affirm.

## BACKGROUND

### First Disciplinary Proceeding

Robert DeMichele was first employed as a physical education teacher at the Woodlands High School by the Greenburgh Central School District in 1972. In April of 1993, the District found probable cause to bring charges against DeMichele pursuant to New York State Education Law § 3020–a. The charges, filed under the general rubric of "Immoral Conduct and Conduct Unbecoming a Teacher," involved allegations that, during the 1991–92 and 1992–93 school years, De-

Michele had engaged in inappropriate conduct with female students. After a hearing, DeMichele was found guilty of five of twelve specific allegations, or "specifications," against him, and was suspended without pay for one and one-half years beginning January 1, 1994. The hearing officer's decision was appealed to the Commissioner of Education, who ultimately sustained the hearing panel's findings of guilt and upheld the suspension. Among the findings of misconduct sustained by the Commissioner of Education were that DeMichele used sexually provocative language with students, touched them on the hip, waist, and buttocks, and had them sit on his lap.

### Second Disciplinary Proceeding

In February 1996, after learning from local newspaper articles the circumstances of DeMichele's suspension, two women contacted the District Superintendent and reported that DeMichele had sexually abused or molested them when they had been students at Woodlands decades earlier during the 1972–73 and 1974–75 school years. There is no evidence in the record that the District was ever aware of these allegations prior to the February 1996 reports.

Further investigation led the District to institute a second disciplinary proceeding against DeMichele under § 3020–a on March 11, 1996. By that time, DeMichele had resumed teaching at Woodlands following his suspension. DeMichele was again charged with Immoral Conduct and Conduct Unbecoming a Teacher. Each charge contained four specifications. In substance, the specifications alleged that:

(1) During the 1972–73 school year, prior to February 28, 1973, DeMichele engaged in sexual intercourse with a sixteen-year-old student named Corinna Bekiers;

(2) During the same time period, DeMichele subjected Bekiers to "sexual contact"; and

---

[*] The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

(3) During the 1974–75 school year, DeMichele subjected a different sixteen-year-old student named Ellen Jazzo to "sexual contact."

Consistent with his response to the first disciplinary charges, DeMichele requested a full hearing on the new charges before a hearing officer pursuant to § 3020–a(2)(c).

At the proceeding, during which DeMichele was represented by counsel, the hearing officer heard testimony from Bekiers and Jazzo in support of the specifications, and accepted into evidence portions of a diary which the hearing officer found—after hearing testimony from a forensic and handwriting expert—had been written by Bekiers at the time of DeMichele's alleged misconduct. The diary corroborated many of Bekiers's allegations and included entries which referenced her relationship with DeMichele. One entry included the date and details of a sexual act between DeMichele and Bekiers, and the name of a restaurant to which Bekiers stated DeMichele had taken her for her birthday.

DeMichele denied the charges made by the two women and asserted that their testimony was not credible. In particular, he contended that the lapse of more than two decades and each woman's admitted drug and alcohol use during the relevant period had impaired their memories. DeMichele also argued that the witnesses' incomplete recollections discredited their entire testimony.

Though permitted to do so by § 3020–a(3)(c), DeMichele sought no discovery from the school district, either before or during the hearing, and called no witnesses in his defense. However, his attorney conducted extensive cross-examination of both Bekiers and Jazzo and challenged the introduction of the Bekiers diary on several grounds.

· In addition to challenging the charges on their merits, DeMichele contended that the charges were time-barred. The hearing officer rejected that defense, citing § 3020–a(1), which provides that:

no charges under this section shall be brought more than three years after the occurrence of the alleged incompetency or misconduct, *except when the charge is of misconduct constituting a crime when committed.*

§ 3020–a(1)(emphasis added). The parties do not dispute that each instance of misconduct alleged in the second disciplinary proceeding constituted a crime when committed.[1] It is also undisputed that the provision does not require that the misconduct actually be the subject of a criminal prosecution.

The hearing officer, in a written decision, found DeMichele guilty of three of the four specifications of Immoral Conduct and all four specifications of Conduct Unbecoming a Teacher, and recommended DeMichele's termination and loss of tenure. One specification of Immoral Conduct—inflation of Jazzo's physical education grades—was found not to have been proven. Shortly after the hearing officer's decision, DeMichele's prosecutor, defendant Green, disclosed the results of the proceeding to the press.

*DeMichele's Federal Claims*

Rather than exercising his right to appeal the hearing officer's decision to New York State Supreme Court, *see* § 3020–a(5), DeMichele filed this action, under 42 U.S.C. § 1983. In it, he has alleged (1) that the school district violated his right to due process of law under the Fourteenth Amendment by forcing him to defend against charges arising out of conduct which occurred more than two decades ago, and which left him unable to defend himself effectively, and (2) that he was deprived of his liberty interest without due process under the Fourteenth Amendment when Green disclosed the results of the hearing to the media.

In an unpublished decision, the district court granted summary judgment to the defendants on both claims pursuant to Fed. R.Civ.P. 56. The district court rejected DeMichele's due process claim on the basis that, under New York law, DeMichele had to, but could not, demonstrate "actual prejudice"

1. Specifically, the conduct alleged included: (1) third-degree rape (New York Penal Law § 130.25); (2) third-degree sexual abuse (§ 130.55); and (3) endangering the welfare of a child (§ 260.10).

stemming from the passage of time. The district court also identified the government's interest in bringing the termination proceeding as "that of keeping the faculty free from sexual predators and ensuring the well-being of the children." These two findings, taken together, supported the district court's conclusion that DeMichele had failed to establish a due process violation. As to DeMichele's claim against Green, the district court held that Green's disclosure of the disciplinary proceeding was not actionable because the results of the proceeding were a matter of public record. Judgment was entered dismissing the complaint, and this appeal followed.

## DISCUSSION

On appeal, DeMichele contends that the district court erred (1) when it rejected DeMichele's due process claim on the basis that DeMichele had suffered no "actual prejudice" as a result of the twenty-four year lapse between the alleged wrongdoing and the commencement of disciplinary proceedings and (2) when the district court held that DeMichele's liberty interest was not violated when Green publicized his disciplinary conviction. We consider each contention in turn.

### I. Due Process Claim

DeMichele argues that since § 3020–a fails to specify a statute of limitations for conduct that is exempt from the three year limitation because it constitutes a crime at the time of its commission, due process considerations compel the conclusion that New York's general statute of limitation for actions and special proceedings contained in CPLR § 213 should be read into § 3020–a, and should govern his claim. This contention is unavailing.

First, under New York law there is no general statute of limitations governing the initiation of a disciplinary proceeding, see Monti v. Chassin, 237 A.D.2d 738, 655 N.Y.S.2d 145, 147 (3d Dep't 1997), and to prevail on the basis of delay the subject of a disciplinary hearing must demonstrate actual prejudice, see id.; Lawrence v. De Buono, 673 N.Y.S.2d 773, 774 (3d Dep't 1998) (citing cases); see also Cortlandt Nursing Home v.

Axelrod, 66 N.Y.2d 169, 177, 495 N.Y.S.2d 927, 486 N.E.2d 785 (1985) ("The passage of time, standing alone, does not . . . serve as a basis for judicial intervention . . . into the administrative process."); Gold v. Chassin, 215 A.D.2d 18, 632 N.Y.S.2d 276, 277 (3d Dep't 1995).

Second, to the extent that DeMichele argues that CPLR § 213 should apply to a proceeding brought pursuant to § 3020–a, he has cited no cases, and we have found none, in support of that proposition. The legislative history of § 3020–a is devoid of any suggestion that § 3020–a is to be read with reference to the CPLR. Accordingly, we decline DeMichele's invitation to impute a statute of limitations into § 3020–a where that section specifically eschews a statute of limitation for conduct which constituted a crime when committed.

The New York state cases cited above set forth the standard that governs judicial review of state disciplinary proceedings. They require the subject of a disciplinary proceeding to demonstrate that delay in initiating proceedings caused "actual prejudice" to his ability to defend against the charges. While this standard presumably would govern state law questions in an appeal from DeMichele's second disciplinary proceeding pursuant to § 3020–a(5), the question remains whether this is the appropriate measure of DeMichele's due process rights.

Some context is useful. The common law fixed no time for the bringing of actions whether civil or criminal. See United States v. Thompson, 98 U.S. 486, 489, 25 L.Ed. 194 (1878). Statutes of limitation "have come into the law not through the judicial process but through legislation." Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). They reflect legislative judgments concerning the relative values of repose on the one hand, and vindication of both public and private legal rights on the other. See Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). "Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. . . . [T]he

history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." *Chase Sec. Corp.*, 325 U.S. at 314, 65 S.Ct. 1137. Congress has determined that capital crimes may be prosecuted without limitation of time,[2] many states impose no statute of limitations restricting certain criminal prosecutions,[3] and at least one state has declined to place time limitations on any criminal prosecutions at all.[4] That is not to say, of course, that the Due Process Clause has no bearing here. As the Supreme Court said in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), "statute[s] of limitations do[ ] not fully define [a defendant's] rights with respect to events occurring prior to indictment" or, by parity of reasoning, prior to the institution of disciplinary proceedings. *Id.* at 324, 92 S.Ct. 455. "The Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). But this background certainly informs the analysis.

■ The first question in any due process inquiry is whether the plaintiff has a constitutionally protected interest. *See Kraebel v. New York City Dep't of Hous. Preservation and Dev.*, 959 F.2d 395, 404 (2d Cir.), *cert. denied*, 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992). In a criminal proceeding, the existence of a constitutionally protected liberty interest is obvious. And while the disciplinary proceeding against DeMichele was not a criminal case, he too had a constitutionally protected interest at stake, albeit a property interest.

■ It is well-settled that DeMichele, as a public employee who can be discharged only for cause, had a constitutionally protected property interest in his tenure and could not be fired without due process. *See Board of Regents of State Colleges v. Roth*, 408 U.S.

564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see also Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120 (1997). What remains, then, is consideration of whether the school district deprived DeMichele of his due process rights by holding a hearing based on misconduct charges twenty-four years after the alleged misconduct occurred.

■ To the extent that DeMichele's claim might be construed as a facial constitutional attack—viz. that the absence of a statutory limitations period renders any proceeding under § 3020–a(5) inconsistent with the Due Process Clause—the argument is entirely without merit. As the Supreme Court has held, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Thus, in order for him to prevail, DeMichele would have to demonstrate that the Constitution would be offended by a § 3020–a(5) proceeding against a teacher even if it were brought to trial, for example, within hours of the alleged offense upon which it was based. Simply stating the question demonstrates its untenability.

■ The more substantial question is the as-applied challenge to this proceeding, the contention that the charges against DeMichele were brought so long after the events in issue that the values of fairness that underlie the Due Process Clause are offended. And while we have found no authority directly on point, the analogous issue of pre-indictment delay in criminal prosecutions is both illuminating and persuasive.

In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, the Supreme

---

**2.** 18 U.S.C. § 3281 provides: "An indictment for any offense punishable by death may be found at any time without limitation."

**3.** *See, e.g., Santiago v. Commonwealth*, 428 Mass. 39, 42, 697 N.E.2d 979, *cert. denied*, —— U.S. ——, 119 S.Ct. 514, 142 L.Ed.2d 426 (1998) (no

statute of limitations for murder); *In the Matter of N.M.P.*, 969 S.W.2d 95, 101 (Tex.App. 1998)(same); *State ex. rel. Tubbs v. Suster*, 84 Ohio St.3d 70, 79, 701 N.E.2d 1002 (1998)(same).

**4.** *See, e.g., Vernier v. State*, 909 P.2d 1344, 1348 (Wyo.1996).

Court dealt with the question whether a delay of 18 months between the commission of a crime and the return of an indictment, in circumstances in which the government developed virtually all of its information within the first month following the events, violated the Due Process Clause. In rejecting the defendant's contention, the Court held that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790, 97 S.Ct. 2044. *See also United States v. Lane*, 561 F.2d 1075, 1077 (2d Cir.1977).

*Lovasco*, of course, was a criminal case. But its analysis is compelling in this context as well. The public interests in both circumstances are substantial—public order and safety in the criminal context and the protection of vulnerable school children from misfeasant or incompetent teachers in the § 3020–a(5) context. The private interests of the accused, however, are much more substantial in the arena of criminal prosecutions than in the employee discipline context. Liberty or even life is at stake in the former; no more than continued employment in a particular job hangs in the balance in the latter. Hence, a delay that would not offend the Constitution in a criminal prosecution *a fortiori* does not do so in a § 3020–a(5) proceeding. The threshold question for DeMichele therefore is whether the length of the delay, considered in light of the reasons for it, renders the prosecution against him violative of "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and which define 'the community's sense of fair play and decency,' *Rochin v. California*, 342 U.S. [165], at 173 [72 S.Ct. 205, 96 L.Ed. 183 (1952)]." *Lovasco*, 431 U.S. at 790, 97 S.Ct. 2044. Only if the answer to that question is affirmative would it be necessary to consider whether the standard applied in criminal cases is too favorable to the accused where the worst possible consequence of the proceeding is the loss of a job as opposed to a felony conviction.

In this case, Bekiers and Jazzo first came forward in February 1996. Before that moment, the District had no basis for accusing DeMichele of the misconduct that became the subject of the hearing. The District served charges on DeMichele the following month, on March 11, 1996. The District therefore cannot be faulted in any respect for the long interval between the acts of which DeMichele was accused and the commencement of the proceeding against him. It acted as soon as it received the information.

DeMichele nevertheless claims that the interval between the events in question and the institution of the proceeding against him was extraordinary and requires reversal. He argues that it "is self-evident that with the passage of twenty-four years, specificity was lost to human memory." Because of the extreme time lapse and faded memories, DeMichele claims he was effectively prevented from defending himself by, for example, attempting to prove that on the dates of the alleged misconduct either he or the complaining witness was not in the area, or by finding alibi witnesses who could testify to his innocence. In essence, DeMichele argues that prejudice should be presumed when so much time passes between alleged misconduct and a subsequent hearing. But there are substantial difficulties with DeMichele's argument.

In the pre-indictment delay context, the Supreme Court thus far has not presumed prejudice from delay, but instead has required a showing of actual prejudice before finding a due process violation. In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), it carefully distinguished actual prejudice from the mere possibility of prejudice "inherent in any delay" and suggested that only claims of actual prejudice trigger due process concern. *Id.*, 404 U.S. at 322–25, 92 S.Ct. 455. Moreover, even actual prejudice does not alone prove a due process violation. As noted above, the Court has said that "proof of prejudice is generally a necessary but not sufficient element of a due process claim. . . ." *Lovasco*, 431 U.S. at 790, 97 S.Ct. 2044. Thus, while the Court may not have shut the door firmly on a contention that at some point the Due Pro-

cess Clause forecloses prosecution of a claim because it is too old, at most the door is barely ajar.

The principal arguments in favor of presuming prejudice are that (1) proof of actual prejudice can be difficult, and (2) common sense suggests that the probability of actual prejudice, whether demonstrable or not, is directly related to the length of the delay. On the other hand, it probably is impossible to "determine in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions." *Id.* at 796, 97 S.Ct. 2044 (citing *Marion*, 404 U.S. at 324, 92 S.Ct. 455). A very short delay might be highly prejudicial in one case; a very long delay might help, or at least not hinder, the defense in another.

■ In the last analysis, we are persuaded that the lack of any objective or definable standards for determining the length of the interval which presumptively would render an accusation unconstitutionally remote precludes our adopting DeMichele's argument. Accordingly, we hold that a showing of actual prejudice is an essential element of a sufficient due process claim of unconstitutional preaccusation delay.

In this case, the evidence of actual prejudice at most was thin. Although permitted to do so, DeMichele sought no discovery. He did not show that he was deprived of any evidence that would have been available if the charges had been brought earlier. He pointed to no material witness who had died or disappeared and to no documentary evidence that had been discarded or lost. And while the fading of memory with the passage of time perhaps may be assumed, that premise does not help DeMichele for two reasons. First, faded memories cut both ways. *See Marion*, 404 U.S. at 322, 92 S.Ct. 455 (delay "may also weaken the Government's case"). Here, DeMichele cross-examined the complaining witnesses extensively, seeking to show that the passage of time and other factors had impaired their memories. Thus, the passage of time arguably helped the defense as much or more than it hurt because it permitted DeMichele to attack the credibility of his accusers on the basis of their incomplete recollections. In any case, we previ-

ously have held that the dimming of memories as a result of delay does not constitute actual prejudice. *See, United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir.1979). Therefore, we believe that the district court did not err in holding that DeMichele failed to establish actual prejudice, a finding fatal to his due process attack.

■ Our conclusion finds support also in the procedural due process cases, although they are not directly applicable because the issue here concerns the right of the State to proceed given the delay rather than the procedure which any permissible proceeding must employ. There is no rigid formula that determines the constitutional sufficiency of the process employed in connection with any given deprivation of a protected interest. On the contrary, " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997) (internal citations omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). In determining adequacy in any given case, a court must weigh the three factors identified by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest....

424 U.S. at 335, 96 S.Ct. 893.

■ There is no question that DeMichele's interest in his tenured teaching position is substantial. *See, e.g., FDIC v. Mallen*, 486 U.S. 230, 243, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (recognizing "the severity of depriving someone of his or her livelihood"); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (same). This is especially true where, as here, the "questionable circumstances under which he left" presumably make finding new employment extremely dif-

ficult. *Loudermill,* 470 U.S. at 543, 105 S.Ct. 1487.

Counterbalanced against DeMichele's interest, however, is the District's interest in removing from the school setting an alleged sex offender who had only recently been found to have been sexually harassing female students in a crude and lascivious manner. This interest is exceptionally weighty.

The remaining *Mathews* factor is the risk of erroneous deprivation and the likely value of any additional procedures or, to adapt the *Mathews* formulation to this context, the likely value of earlier prosecution. But we cannot uncritically assume without proof that an earlier prosecution necessarily would be more advantageous to the accused. As indicated above, delay may hurt the prosecutor more than the defendant or *vice versa.* One cannot easily generalize that one outcome is more likely than the other. Moreover, even if the balance of hardship generally did disadvantage the defendant rather than the prosecution, this would not justify the conclusion that this prosecution offends the Due Process Clause. Here the District's interest in protecting its students is exceptionally strong. DeMichele's interest in keeping *this* job, while substantial, is far less significant. Hence, the *Mathews* approach of balancing the respective interests of the State and the individual and the value of more timely proceedings also leads us to conclude that there was no due process violation here. The District's interest outweighs the debatable importance of a more timely proceeding given the relative modesty of the interest DeMichele had at stake in this hearing.

II. *Liberty Claim*

■ We can more easily dispose of DeMichele's second § 1983 claim. DeMichele asserts that Green's dissemination to the media of the results of his second disciplinary hearing stigmatized him and thereby wrongfully deprived him of his liberty interest under the Fourteenth Amendment. Central to this claim is DeMichele's contention that the results of the disciplinary proceeding were not a matter of public record, but instead were part of his "employment history" which could not be released under New York's Freedom of Information Law, Public Officers Law, art. 6, ("FOIL"). *See Hanig v. State Dep't of Motor Vehicles,* 79 N.Y.2d 106, 109–10, 580 N.Y.S.2d 715, 588 N.E.2d 750 (1992) (citing exemption under Public Officers Law § 89(2)(b)(i) for "disclosure of employment, medical or credit histories").

As noted by the district court, however, New York courts have found that the disposition of misconduct charges does not constitute part of an employee's "employment history" as that phrase is used in New York's FOIL. *See, e.g., LaRocca v. Board of Educ. of Jericho Union Free Sch. Dist.,* 220 A.D.2d 424, 632 N.Y.S.2d 576, 578–79 (2d Dep't 1995) (holding that settlement agreement, which disposed of misconduct charges brought under § 3020–a, did not constitute an "employment history" for FOIL purposes). Thus, we agree with the district court that there is no basis for DeMichele's claim that the results of the proceeding were to remain private, and that Green's dissemination of that information deprived him of his liberty interest.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.