■ In the Matter of MICHAEL M. KATZ, Petitioner, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Respondents. [739 NYS2d 466] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, inter alia, suspended petitioner's license to practice medicine in New York.

In June 2000, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a Board-certified radiologist, with 48 specifications of misconduct relating to his care and treatment of 21 patients between 1996 and 1998. Specifically, BPMC alleged that petitioner had practiced medicine with gross negligence, gross incompetence, negligence on more than one occasion and incompetence on more than one occasion, in addition to failing to maintain accurate patient records, engaging in fraudulent practice, filing false reports and ordering excessive tests. These charges stemmed from petitioner's review and interpretation of MRI studies and ultrasound examinations, the accuracy of the reports generated as the result of such reviews and the adequacy of petitioner's records.

During the course of the hearing that ensued before a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter Committee), the underlying statement of charges was amended to include, insofar as is relevant to this proceeding, an additional allegation of fraudulent practice and filing a false report, which related to the generation and issu-

ance of a particular MRI report to New York Central Mutual Fire Insurance Company (hereinafter NYCM) in December 1997. Additionally, various allegations not at issue in this proceeding were withdrawn. At the conclusion of the hearing, the Committee credited the testimony offered by BPMC's witnesses—Peter Kalina, a physician Board-certified in diagnostic radiology with additional qualifications in neuroradiology, and Kim Nolan who, during the relevant time period, was employed as a medical review examiner for NYCM—and sustained the specifications of gross negligence, negligence on more than one occasion and failure to maintain accurate patient records.[1] As to penalty, the Committee suspended petitioner's license to practice for a period of one year commencing July 7, 2000, restricted petitioner's practice of radiology to hospitals whose departments of radiology were certified by the American College of Radiology and required that petitioner be supervised by the chairperson of any radiology department in which he worked.

Both petitioner and BPMC thereafter sought review from respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB), with petitioner seeking to annul the Committee's determination and BPMC seeking to sustain additional specifications of misconduct and to revoke petitioner's license. Ultimately, the ARB affirmed the Committee's determination as to the specifications of gross negligence, negligence on more than one occasion and failure to maintain accurate patient records, in addition to sustaining the charges that petitioner engaged in fraudulent practice and filed a false report with respect to the December 1997 MRI report submitted to NYCM regarding patient B. As to penalty, the ARB sustained the Committee's decision to restrict petitioner's practice, modified the restriction to limit petitioner's practice to a hospital licensed or operated by the government and fined petitioner $10,000 for his fraudulent conduct. Petitioner thereafter commenced the instant proceeding in this Court seeking to annul the ARB's determination, and we denied petitioner's application for a stay pending review.

As to the specifications of engaging in fraudulent practice and filing a false report, petitioner initially contends that the midhearing amendment to the statement of charges in this regard violated his right to due process. Assuming that this issue is properly before us, we find petitioner's argument to be

---

1. In so doing, the Committee did not sustain certain factual allegations relating to such specifications, including those relative to petitioner's interpretation of ultrasound examinations.

lacking in merit. A review of the original statement of charges plainly reveals that petitioner was well aware that the generation and submission of two MRI reports, both dated December 10, 1997 but containing significantly different impressions,[2] was the basis of the charges as to patient B. The statement of charges further alleged that petitioner knowingly concealed from BPMC the issuance of the benign report to NYCM and that he did so with an intent to deceive. The only additional allegation added during the course of the hearing was that petitioner, in addition to deceiving BPMC, also deceived NYCM by knowingly concealing from that entity the fact that he had issued an MRI report to BPMC with a diagnostic impression of multiple sclerosis. Inasmuch as our review of the charges and the record indicates that petitioner was aware of the underlying factual allegations, we conclude that he received adequate notice and was not unfairly surprised or prejudiced by the subject amendment (*see, Matter of Gold v Chassin*, 215 AD2d 18, 23, *lv denied* 87 NY2d 805; *Matter of Major v Board of Regents of Univ. of State of N.Y.*, 160 AD2d 1041, 1043, *lv denied* 76 NY2d 705).

Petitioner further asserts that the evidence contained in the record is insufficient to sustain the foregoing fraud charges. Again, we cannot agree. A finding of fraudulent practice requires proof that a party intentionally, deliberately or knowingly misrepresented a material fact (*see, Matter of Lobacz v Sobol*, 171 AD2d 174, 176). Although the Committee found that BPMC tendered insufficient proof in this regard, the case law makes clear that the ARB is free to substitute its judgment for that of the Committee on issues of credibility and guilt (*see, Matter of Wilkins v New York State Dept. of Health*, 289 AD2d 634, 635). Here, the record permits a finding that petitioner was aware that patient B suffered from multiple sclerosis, and he acknowledged that NYCM most likely would have objected to paying for successive MRI studies to monitor that condition. Nolan offered similar testimony regarding the ramifications of the MRI report received by NYCM relative to patient B's claim. Although petitioner contended that the report sent to NYCM indicating a "normal non-contrast MRI of

---

2. The December 10, 1997 MRI report submitted to NYCM concluded that the study was a "normal non-contrast MRI of the brain," whereas the December 10, 1997 report submitted to BPMC noted an impression of "multiple small areas of increased signal intensity predominantly in the periventricular area as well as the basal ganglion areas bilaterally. These changes can be seen as a variant of normal or would also be compatible with the diagnosis of multiple sclerosis. This should be correlated clinically. Based on previous report, there has been no change in the interval."

the brain" was the product of a transcription error or carelessness, the ARB was free to reject such testimony, and the record as a whole is sufficient to permit an inference of an intent to deceive (*see, Matter of Corines v State Bd. for Professional Med. Conduct,* 267 AD2d 796, 799-800, *lv denied* 95 NY2d 756). Accordingly, we are unable to discern any basis upon which to disturb the ARB's determination on these charges.

As to the remaining specifications of misconduct, our inquiry is limited to whether the ARB's determination is arbitrary, capricious, affected by an error of law or an abuse of discretion; in essence, our review distills to whether the ARB's findings have a rational basis and are factually supported (*see, Matter of Wilkins v New York State Dept. of Health, supra; Matter of Harris v Novello,* 276 AD2d 848, 849). In this regard, Kalina testified at length as to the misinterpretations/misdiagnoses made by petitioner with respect to patients A, B, C, D, E, F, H, I and J, as well as the deficiencies noted in the relevant patients' records. Although petitioner attempts to minimize the effect of his actions relative to these patients (noting that no one actually was harmed by his misinterpretation of the subject MRI studies), the record nonetheless documents petitioner's demonstrated misconduct. We therefore cannot say that the ARB's findings as to the specifications of gross negligence, negligence on more than one occasion and failure to maintain accurate patient records lack a rational basis. Petitioner's remaining contentions, including his assertion that the penalty imposed is shockingly disproportionate to the underlying specifications of misconduct, have been examined and found to be lacking in merit.

Cardona, P.J., Mugglin, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

