■ In the Matter of PETAR MUNCAN, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT et al., Respondents. [745 NYS2d 304] —Crew III, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which suspended petitioner's license to practice medicine in New York.

In April 2000, the Bureau of Professional Medical Conduct charged petitioner, a licensed physician, with gross negligence, negligence on more than one occasion, gross incompetence, incompetence on more than one occasion and fraudulent practice. The charges stemmed from petitioner's care and treatment of patient A wherein petitioner, among other things, removed a healthy kidney from patient A's body. Following a hearing before a Hearing Committee of respondent State Board for Professional Medical Conduct (hereinafter the Committee), the Committee sustained the specifications alleging that petitioner had practiced with gross negligence and negligence on more than one occasion and dismissed the remaining charges. As to penalty, the Committee suspended petitioner's license to

practice medicine for 48 months, stayed said suspension for 42 months and placed petitioner on probation. Upon appeal to respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB), the ARB affirmed the Committee's findings as to guilt and penalty and, further, sustained the specification alleging fraudulent practice. Petitioner thereafter commenced this proceeding pursuant to CPLR article 78 seeking to annul only that portion of the ARB's determination pertaining to the charge of fraudulent practice.

In reviewing the ARB's determination, our inquiry is of course limited to ascertaining whether such determination is arbitrary and capricious, is affected by an error of law or constitutes an abuse of discretion (*see, Matter of Steckmeyer v State Bd. for Professional Med. Conduct*, 295 AD2d 815, 817). To that end, although it is well settled that "[a] finding of fraudulent practice requires proof that a party intentionally, deliberately or knowingly misrepresented a material fact" (*Matter of Katz v Novello*, 292 AD2d 652, 654), it is equally well settled that knowledge and intent to deceive may be inferred from the surrounding circumstances (*see, Matter of Steckmeyer v State Bd. for Professional Med. Conduct, supra* at 817).

Here, a preoperative CT scan report indicated the presence of a five centimeter by seven centimeter mass in patient A's left kidney. Petitioner admittedly did not review either the actual CT scan or the MRI films prior to surgery and did not have such films with him in the operating room on the day of the surgery. Had he done so, he would have discovered that the CT scan report erroneously indicated that there was a mass in patient A's left kidney when in fact such mass was located in patient A's right kidney. Upon exposing the left kidney, petitioner observed no gross abnormalities or deformities and was unable to palpate any masses. Nonetheless, petitioner removed the left kidney and sent it to the hospital's pathology department for examination. That same day, petitioner was advised that he had removed a healthy kidney; indeed, it even was suggested to him that he may have removed the wrong kidney. Despite this information, petitioner made no attempt to reconcile the results of the preoperative tests* with what he had observed in the operating room and what the subsequent dissection of the left kidney had disclosed. Rather, petitioner discharged patient A with a postoperative diagnosis of left renal mass, failing to note that he had in fact removed a

---

* There also was testimony that a mass of the size depicted on the initial CT scan could not possibly have disappeared in the interval between such test and the actual surgery.

tumor-free kidney. When, in September 1999, another CT scan revealed the presence of a six centimeter by seven centimeter mass in patient A's right kidney, petitioner deemed this to be a "new" tumor that was not present on the CT scan conducted four months earlier. Such a diagnosis, however, appears highly suspect given the medical testimony that this "new" tumor was in the same location and had the same consistency and appearance as the tumor appearing in the prior CT study. The record also makes clear that it was highly unlikely that a tumor of this dimension could have achieved such size during the relatively brief period of time between the two CT studies.

In our view, such evidence, taken as a whole, is sufficient to support an inference of fraud—namely, that petitioner knew he had removed the wrong kidney and, instead of taking steps to rectify that situation, intentionally concealed his mistake. Accordingly, the ARB's determination is confirmed and the underlying petition is dismissed.

Carpinello, Mugglin, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.